Eastes v. Eastes.

———◆———

No. 8595.

EASTES v. EASTES.

DIVORCE.—*Order of Circuit Court.—Dismissal of Appeal.*—The failure of the defendant to comply with an order of the circuit court, requiring him to pay into court a certain sum of money to enable the plaintiff to prosecute her cause before the Supreme Court, if the same should be appealed by him to that court, affords no sufficient ground for the dismissal of such appeal.

SAME.—*Practice.—Summons, when Returnable.—Motion to Quash.— Notice.—* The provisions of section 315 of the civil code of 1852, as amended by the act of March 6th, 1877 (Acts of 1877, Reg. Sess., p. 105; section 516, R. S. 1881), in relation to the issue and service of process, have no application to suits or proceedings for divorces; but these are governed by the provisions of the divorce law of March 10th, 1873. 2 R. S. 1876, p. 324; article 37, R. S. 1881. The fact that the summons is issued for a day in term other than the first day will afford no sufficient ground for quashing the writ, but its service will be a sufficient notice of the pendency of the suit for the next ensuing term of the court.

SAME.—*Affidavit of Plaintiff's Residence and Occupation.—Motion to Dismiss.—* The provisions of the last sentence of section 7 of the divorce law (section 1031, R. S. 1881), in relation to an affidavit of the plaintiff's resi-

dence and occupation, are so far mandatory as to require a substantial compliance therewith. But where the objections to such affidavit relate chiefly to formal matters, and a substituted affidavit is filed in substantial conformity with the requirements of the statute, a motion to dismiss or to quash the summons, for the want of a sufficient affidavit, is correctly overruled.

SAME.—*Cause for Divorce.*—*Cruel and Inhuman Treatment.*—For what constitutes cruel and inhuman treatment of the wife by the husband, within the meaning of the divorce law, see the opinion.

SAME.—*Admissibility of Evidence.*—*Failure to Provide.*—Evidence of the husband's failure to provide suitably for the support of his wife and infant child, according to his ability, is admissible as tending to prove that his treatment of his wife is cruel and inhuman.

SAME.—*Alimony.*—*Support of Infant Child.*—Allowances for alimony, and for support of infant children, are largely within the discretion of the trial court, and the Supreme Court will not interfere therewith unless a clear abuse of discretion is shown.

From the Hendricks Circuit Court.

*T. S. Adams,* for appellant.

*L. M. Campbell,* for appellee.

HOWK, J.—This suit was commenced by the appellee, on the 14th day of October, 1879, to obtain a divorce from the appellant, her husband, the custody of their infant son, and alimony in the sum of $5,000. The appellant appeared, and such proceedings were had in the cause as that, on the 29th day of January, 1880, the issues joined were tried by the court, and a finding was made for the appellee, that the allegations of her complaint were true, and entitled her to the relief therein demanded, and the court assessed her alimony in the sum of $300.00, and the amount necessary to maintain the infant son of the parties at the sum of $1,200. Thereupon the court rendered a judgment and decree dissolving, annulling and setting aside the marriage contract, theretofore entered into and then subsisting between the said parties, and for the payment of said alimony and costs, and requiring the appellant to pay the appellee for the support and education of their infant son the sum of $100 on the first day of February, in each year, during the period of twelve years.

Eastes *v.* Eastes.

Before considering any of the questions presented by the appellant's assignment of errors, it is proper that we should dispose of a point made in argument by appellee's counsel. The record shows that, after the circuit court had rendered the decree of divorce in this cause, on the appellee's motion, the court ordered that the appellant should pay into court $50 for the appellee, to enable her to prosecute this case before the Supreme Court, in case the same should be appealed by him to this court. The clerk of the court below has appended his certificate to the transcript of the record, to the effect that the appellant had paid no money into his hands for the use of the appellee. Upon this showing, the appellee's counsel asks that this court will dismiss this appeal. Conceding, without deciding, that it is sufficiently shown that the appellant is prosecuting this appeal in contempt of the order of the circuit court, we are of the opinion that this action of the appellant would not authorize us to dismiss his appeal. The circuit court has full power by law to enforce its orders, and to punish, if necessary, a wilful disobedience thereof. But we know of no law which would authorize this court to dismiss the appeal in this case, for the reason that the appellant had failed, for some cause not shown, to comply with the order of the court below.

It appears from the record of this cause, that the appellee's complaint was filed in term time, to wit, during the September term, 1879, of the court below, with the following endorsement thereon, signed by her attorney, to wit: "The clerk will issue summons in the within cause, returnable on the 24th of October, 1879, and set said cause down for trial on said day."

Neither the summons nor the return thereof appears in the transcript before us, and it does not appear that there was any appearance or any action had in the cause until the January term, 1880, of said court. On the 10th day of that term, to wit, on January 15th, 1880, the appellant, by his counsel, entered a special appearance, and moved the court to quash the summons issued in said cause, which motion was overruled, and to this ruling he excepted, and filed his bill of exceptions.

This decision of the court is assigned as error by the appellant.

The first point made by the appellant's counsel, in his brief of this cause, is that the act of March 6th, 1877, amending section 315 of the civil code of 1852, in regard to process or publication in civil actions, is not applicable to suits or proceedings for divorces. In said section as amended, it was provided that the plaintiff might, when he filed his complaint before or during any term of the court, fix the day during such term, by endorsement thereof on his complaint, upon which the defendant should appear, which day, when so fixed, should be stated in the summons issued, and the action should be docketed accordingly. It was further provided in said amended section, that if the summons should be personally served ten days before the day so fixed, or if publication should be made for three weeks, thirty days before such day, such action should thereupon stand for issue and trial at such term, and the court should have jurisdiction to hear and determine the same, as if such summons had been served or such publication made before the first day of the term. Acts of 1877, Reg. Sess., p. 105. This amended section was substantially re-enacted, with some additional provisions, as section 367 of the civil code of 1881, and is now section 516 of Revised Statutes of 1881. We agree with the appellant's counsel in the opinion that the amended section 315 had and has no application whatever to suits or proceedings for divorces. Such suits or proceedings were governed and controlled by the provisions of the act of March 10th, 1873, "regulating the granting of divorces," etc. 2 R. S. 1876, p. 324.

In section 13 of said act, it was provided as follows: " The cause shall stand for issue and trial at the first term of the court after the summons has been personally served upon the defendant ten days, or publication has been made thirty days before the first day of such term." 2 R. S. 1876, p. 329. This is now section 1037 of the Revised Statutes of 1881, p. 198. But we do not agree with appellant's counsel in his conclusion, that, because the summons in this case was issued in

term time and made returnable to a future day in the same term, it was therefore inoperative and wholly void. This seems to us to be clearly a *non sequitur*. It has always been the law, in a free country, that the courts were open at all times for the institution of suits, as well in term time as in vacation; and where, as in this case, the suit was commenced in term time, the process issued would be made returnable at that term, unless otherwise ordered. In such cases, if the process were served either before or after the close of the term, the effect of such service would be the same, namely, the continuance of the cause, by operation of law, until the next succeeding term of the court. In the case at bar, the appellee made no effort to prosecute her suit, and the appellant did not appear therein, specially or otherwise, at or during the term of the court in which he had been summoned; but the cause seems to have been then continued, and, in the absence of anything appearing to the contrary, we may reasonably assume, for the reason that it appeared that the summons had not been personally served upon the appellant ten days before the first day of the then term of the court. The summons and the service thereof, as it seems to us, were sufficient notice to the appellant, under the law, of the pendency of appellee's suit for the January term, 1880, of the circuit court.

The appellant's counsel further insists, that the summons ought to have been quashed, and the suit dismissed, for the reasons assigned in his written motion therefor. These reasons were, in substance, as follows:

1. Because the affidavit, filed with appellee's complaint, was sworn to before a notary public, and not before the clerk of the circuit court, as contemplated by the statute;

2. Because said affidavit was dated on April 27th, 1879, nearly six months prior to the date of the filing of said complaint and affidavit; and,

3. Because there was no affidavit filed with appellee's complaint, showing that she was a resident of Hendricks county, Indiana, at the time she commenced this suit.

The appellee responded to the motion of the appellant by a counter motion for leave to file a substituted affidavit, which latter motion was sustained by the court; and thereupon she filed such affidavit, sworn to before the clerk of said court, on the 3d day of January, 1880. In this affidavit the appellee stated in substance, that she then was and had been during her whole life a *bona fide* resident of said Centre township, in said Hendricks county; that her affidavit, theretofore filed in this cause, on October 14th, 1879, was made and subscribed by her on April 26th, 1879, in good faith, for the purpose of being filed with her complaint, and was left with her attorney until said suit was commenced; that the sole cause of her delay in the commencement of her suit was the hope of herself and her attorney that she and appellant might become reconciled and that no suit would be necessary.

In discussing the questions arising under his written motion to quash the summons and dismiss the suit, appellant's counsel founds his argument upon the provisions of the last sentence of section 7 of the divorce act of March 10th, 1873, 2 R. S. 1876, p. 326; section 1031 of Revised Statutes of 1881. This sentence reads as follows: "And the plaintiff shall, with his petition, file with the clerk of the court, an affidavit subscribed and sworn to by himself, in which he shall state the length of time he has been a resident of the State; and stating particularly the place, town, city or township in which he has resided for the last two years past; and stating his occupation, which shall be sworn to before the clerk of the court in which said complaint is filed." It is claimed by counsel that these provisions of the statute are mandatory, and we are of the opinion that they are so far imperative as that there should be, in every case, a substantial compliance with their requirements. Manifestly, the legislative intent in the enactment of these provisions was to limit the operation of the statute to *bona fide* residents of the State, and to restrain and prevent the procurement of divorces by non-residents, through fraud or imposition practiced on the courts. Such substantial com-

pliance with the terms of the statute as may be necessary to carry out and accomplish the purpose and intention of the Legislature, the courts should encourage and require; but we fail to see that any good result would or could be accomplished by giving these statutory provisions the literal or rigid construction which the appellant's counsel insists should be placed upon them.

In the case now before us, there was certainly no error, prejudicial to the appellant's rights or interests, in the proceedings of the court, either in overruling his motion to quash the summons and dismiss the suit, or in permitting the appellee to file with her complaint a substituted affidavit. In our opinion, any other action on the part of the court, under the circumstances of this case, would have been error so gross as to have amounted practically to a denial of justice. The appellant's written motion to quash the summons, and dismiss the suit, was correctly overruled. .

The next error complained of, in argument, by appellant's counsel, was the decision of the court in overruling his demurrer to appellee's complaint. It was alleged by appellee, in her complaint, that, at all times since her marriage to appellant, she had performed all her duties as his wife, and had at all times been, and then was, ready and willing to perform her duty as a wife toward the appellant; but she averred that appellant had broken his marriage contract and had treated appellee in a cruel and inhuman manner, in this, that, in June, 1878, the appellant without cause left and abandoned appellee and her infant child, and absconded from this State to some distant, and to her unknown, State or territory, and without any explanation, excuse, or correspondence with her, left her dependent upon herself and her friends for the support of herself and said infant child; that, from that time to the commencement of this suit, appellant had not provided any means of support for either her or said child; that, during said time, appellee had been seriously ill and greatly in

need of assistance, and of the society, nursing and comfort of her husband; and that, notwithstanding all this, the appellant had grossly and cruelly neglected her, and still neglected and refused to live with her, or to support and provide for her in any degree.

In section 8 of the divorce act of March 10th, 1873, which is section 1032 of the Revised Statutes of 1881, the causes for which divorces may be decreed are specified, and it is declared that they shall be decreed for " no other " causes. It is manifest from the allegations of appellee's complaint or petition, in this case, that she relied for a divorce upon the *fourth* and *fifth* statutory causes therefor. These causes were as follows:

" *Fourth.* Cruel and inhuman treatment of either party by the other.

" *Fifth.* Habitual drunkenness of either party, or the failure of the husband to make reasonable provision for his family."

The latter part of this *fifth* cause is repeated as the *sixth* statutory cause for a divorce, as follows: " *Sixth.* The failure of the husband to make reasonable provisions for his family, for a period of two years."

We are of the opinion that the allegations of appellee's complaint were sufficient to constitute a cause of action in her behalf for a divorce from the appellant, and to withstand his demurrer thereto for the want of facts, under the *fourth* statutory cause for a divorce. If it be true, as alleged, and the demurrer admits its truth, that the appellant without cause, and within three years after his marriage to appellee, abandoned her and her infant child, absconded from the State, and without explanation, excuse or even correspondence with her, left her dependent upon her own labor and the charity of friends for the support of herself and child, it may well be said, as it seems to us, that his " treatment " of her was sufficiently " cruel," within the meaning of the statute, to entitle her to a decree of divorce. To a sensitive, spirited woman, such treatment would be far more cruel and inhuman than the infliction of corporal.

punishment or of severe injuries to her person ; for mental suffering and public shame and disgrace are more difficult to be borne than mere physical pain. We are aware that a different view from the one here expressed has been taken by an eminent writer on the law of marriage and divorce, in reference to the nature and extent of the cruel treatment which would entitle the complaining party to a divorce. Thus, in 1 Bishop on Marriage and Divorce, section 717, it is said : " Cruelty, therefore, is such conduct in one of the married parties as endangers, either apparently or in fact, the physical safety or health of the other, to a degree rendering it physically or mentally impracticable for the endangered party to discharge properly the duties imposed by the marriage." This definition of cruelty, as a ground for divorce, is undoubtedly good as far as it goes, but it will not do to say, we think, that this definition includes every species or form of "cruel and inhuman treatment," for which, under our statute, either party to the marriage may obtain a divorce.

In the recent case of *Graft* v. *Graft*, 76 Ind. 136, it was held by this court, and correctly so, as it seems to us, that false charges of adultery, publicly made by the husband against his wife, were cruel and inhuman treatment of the wife, within the meaning of that expression as used in the statute, such as authorized the trial court to grant her a divorce from the husband on the ground of such treatment. To the same effect is the case of *Shores* v. *Shores*, 23 Ind. 546. The appellant's treatment of the appellee, as alleged in the complaint in this case, is fully as cruel and inhuman as the treatment of the wives in the cases cited. For here the appellant abandons his wife without cause, and leaves her to support herself and child, and to endure the sneers and scoffs of others as to her unfortunate condition as best she can. The court did not err, we think, in overruling the demurrer to appellee's complaint or petition, for the want of sufficient facts therein.

The other ground of demurrer was, that the court had no jurisdiction of the subject-matter of the suit. This ground

of objection to the complaint, even if it existed, was not apparent on the face of the complaint, and, therefore, it could not be reached by demurrer. It is evident, however, from the brief of appellant's counsel, that, by this ground of demurrer, although it was addressed to the complaint alone, it was intended to reach certain supposed irregularities in the affidavit filed with the complaint. These supposed irregularities were obviated and cured by the filing of the substituted affidavit; but, if they had not been, it is certain they were not reached by the demurrer to the complaint.

It is earnestly insisted by the appellant's counsel, that the finding of the court was contrary to law, and was not sustained by sufficient evidence; but his argument is based upon the theory, that, even if every allegation of the complaint were strictly true, the appellee would not be entitled to a divorce, under the law. We have reached the conclusion, however, that appellee's complaint stated a cause of action, entitling her to a divorce from the appellant, under the law; and the evidence in the record, as we read it, tended to establish this cause of action more strongly in her favor than it was stated in her complaint. For the evidence not only showed the appellant's treatment of the appellee to be fully as "cruel and inhuman" as she had stated in her complaint; but it also showed, that the effect of such treatment was to prostrate her with serious sickness for a long time.

Appellant's counsel claims that the trial court erred in the admission of evidence of the entire failure of the appellant to provide for the support of the appellee and of her infant child. We think, however, that this evidence was admissible as tending to prove the appellant's treatment of the appellee to have been cruel and inhuman.

We can not disturb the court's allowance of alimony, or its allowance for the support of the appellant's child. In *Powell* v. *Powell*, 53 Ind. 513, it was said of such allowances: "These matters are both, of necessity, largely within the discretion of the court below; and the abuse of that discretion must be very

clear indeed, to justify this court in interfering with its exercise." We can see no such abuse of discretion in the case at bar. *Conn* v. *Conn*, 57 Ind. 323.

Appellant's counsel concedes, in his brief of this cause, that the questions presented by the alleged error of the court, in overruling the motion in arrest of judgment, are precisely the same as those which were presented by the supposed error of the court, in overruling the demurrer to the complaint. Upon those questions, we have already said all that we desire to say. Besides, the record shows that the motion in arrest was not made in this case, until five days after the rendition and entry of the judgment. This court has held, that a motion in arrest must be made before, and can not be made after, the rendition and entry of the judgment. *Hilligoss* v. *The Pittsburgh, etc., R. R. Co.*, 40 Ind. 112.

We have found no error in the record of this cause, requiring the reversal of the judgment below.

The judgment is affirmed, at the appellant's costs.

Woods, J., dissenting, says: I do not think the complaint shows a cause for divorce, on the ground of cruel treatment. The statute has expressly provided for divorce, on the ground of abandonment and failure to provide, which must be for two years; and we have no right to call it by another name, and so reduce the time of abandonment below the period fixed in the statute.