Gallup, Ex. v. Schmidt, Treas.

## GALLUP, EXECUTOR, v. SCHMIDT, TREASURER.

[No. 18,812. Filed February 16, 1900.]

TAXATION.—Placing Omittted Property on Tax Duplicate.—Notice.— Executors and Administrators.—Nonresidence.—The official residence of an executor, so far as the taxation and administration of the assets of the estate are concerned, is in the county of his appointment, and a notice to appear before the county auditor and show cause why property of the estate should not be added to the tax duplicate, under §8560 Burns 1894, is not void for the reason that the executor resided in another state. pp. 200, 201.

SAME.—Executors and Administrators. — Nonresidence. — Notice.— Constitutional Law.—An executor residing in another state, who was present and served with notice of intention of county auditor to add to the tax duplicate omitted property belonging to the estate, under the provisions of §8560 Burns 1894, cannot assail the constitutionality of said section on the ground that it attempts to provide for the assessment and taxation of omitted property owned by nonresidents of the State, without affording such nonresident notice or a day in court. pp. 201, 202.

SAME.—Placing Omitted Property on Tax Duplicate.—Notice.—Nonresidence.—Constitutional Law.—Section 8560 Burns 1894 providing notice to property owners by county auditor of intention to add omitted property to tax duplicate is not unconstitutional for failure to provide notice to nonresidents, since such assessment is not final and the nonresident is not deprived of his day in court. p. 202.

SAME.— Executors and Administrators.— Failure to Pay Taxes.— Duty of County Treasurer.—The provision of §8587 Burns 1894 requiring the county treasurer to report to the court the delinquency of an executor or administrator in the payment of taxes due from the estate is imperative, but, in so far as the statute prescribes the time, it is directory only. pp. 203-207.

PRACTICE.—Harmless Error—Overruling a demurrer to a complaint against an executor to require him to pay taxes due from the

Gallup, Ex. v. Schmidt, Treas.

estate in which the amount claimed to be due exceeded the amount of money in the hands of the executor was harmless, where the recovery was for an amount less than that shown to be in the hands of the executor. *p. 207.*

TAXATION.—*Assessment of Omitted Property by County Auditor.*—In a proceeding by the county auditor to place omitted property of testator on the tax duplicate for taxation, under the provision of §8531 *et seq.* Burns 1894, it appeared that testator from 1881 to the time of his death in 1893 had been in the banking business, loaning money and dealing in bonds; that during this time it did not appear that he made or lost any large sum of money, and he annually returned personal property for taxation varying from $14,000 to $24,000. At the time of his death he left a personal estate of taxable property appraised at $383,906.46. The executor, who was the brother of testator, and practically his sole beneficiary, refused to produce testator's books and accounts, and the auditor made an assessment of omitted property, taking the amount returned by the executor as a basis, and deducted five per cent. as the probable net annual increase, and the result thus reached he took as the true amount for 1892, and from this he deducted five per cent. and took the result as the correct amount for 1891, and so on back to 1881. *Held*, that the assessment made by the auditor will be presumed to be correct, and will not be overthrown in the absence of the preponderance of the evidence to the contrary. *pp. 207–212.*

SAME.—*Assessment of Omitted Property by County Auditor.*—*Correction by Court.*—Where the county auditor in placing omitted property on the tax duplicate for taxation deducted therefrom an amount which would produce an amount voluntarily paid by testator's executor, the court erred in again deducting such sum from the amount assessed against the estate by the auditor, since if the assessment was improper it should have been set aside *in toto. pp. 212–216.*

SAME.—*Assessment of Omitted Property by County Auditor.*—*Penalties.*—Under the tax statutes penalties and interest can only be imposed for the nonpayment of taxes after the property has been placed upon the tax duplicate, and there is no authority for adding the penalty and interest to omitted property placed upon the tax duplicate by the county auditor which would have accrued if the property had been placed on the tax duplicates at the proper time and the taxes not paid. *pp. 216, 217.*

From the Marion Circuit Court. *Reversed.*

*W. H. H. Miller, J. B. Elam, J. W. Fesler* and *S. D. Miller,* for appellant.

*W. L. Taylor,* Attorney-General, *Merrill Moores* and *C. C. Hadley,* for appellee.

HADLEY, C. J.—William P. Gallup, having for thirty-one years been a resident therein, died testate in the city of Indianapolis, Marion county, in December, 1893, the owner and in possession of a large personal estate in said county. His will was duly admitted to probate in the Marion Circuit Court, and Edward P. Gallup, a resident of the state of New Hampshire, the principal and residuary legatee, was qualified as executor in January, 1894, and March 5, 1894, filed an inventory showing a personal estate of $492,628.26. Subsequently, in the spring of 1894, said executor listed to the assessor for taxation for the year 1894 personal property of the estate aggregating $383,906.46. January 15, 1895, Taggart, then auditor of Marion county, discovered what he believed to be credible information that a large amount of personal property belonging to and in possession of said decedent had not been listed for taxation for the years 1881 to 1893, both inclusive, and upon that day, acting under §8560 Burns 1894, caused to be served by the sheriff upon Edward P. Gallup, as executor, who was at the time in Indianapolis engaged in the settlement of said estate, notice in writing of his intention to add such omitted property to the tax duplicate, and requiring such executor to appear before him within five days to show cause, if any, why such property should not be so added. The notice specified the property to be added as county, township, town, and other bonds, notes, mortgages, claims, dues, demands, and other credits, money on hand and on deposit. January 19, 1895, the executor appeared before the auditor, and filed written objections to the authority of the auditor to proceed further, which were overruled. The executor then filed an answer to the notice, and, on the 21st day of January, 1895, the auditor issued a subpoena for the executor, requiring him to appear forthwith before him, and to bring with him all notes, mortgages, and bonds in his possession as such executor, to testify in said proceeding. The executor appeared on the 24th day of January, 1895, and filed further objections to

the jurisdiction of the auditor, which were overruled, and thereupon he was examined under oath. Upon consideration of the evidence, the auditor found that William P. Gallup, in addition to the property returned by him for taxation, was the owner and in possession of other taxable personal property, not listed, and not taxed during the several years from 1881 to 1893, specifically stated for each year, and January 25, 1895, placed the same upon the tax duplicates, and computed and extended taxes thereon for the whole of said period, including statutory penalties and interest, the sum of $61,233.59. After the same was placed upon the duplicate in the treasurer's hands, he made demand upon the executor to pay said additional taxes, but he refused to pay all, or any part thereof.

The executor, on the 4th day of January, 1895, filed in the circuit court his final settlement report, and gave notice that the same would be finally heard on the 26th day of January, 1895; and upon the day set for the hearing of the report, the same being the next day after the additional assessments had been placed upon his duplicate, Holt, as treasurer of Marion county, filed in said court, under §8587 Burns 1894, in the term thereof that was then running, his petition for an order upon the executor to show cause why he should not pay the taxes assessed by the auditor. The order was granted, and, on February 9, 1895, the executor appeared and filed his motion to dismiss said proceeding for the reason that the court had no jurisdiction to proceed to hear the cause, for the reason that the county treasurer was not authorized, under the law, to present said claim to the court at the January term, 1895. More than two years afterward, to wit, December 18, 1897, the court overruled appellant's motion to dismiss; and on June 18, 1898, appellant filed his answer in eight paragraphs. A demurrer to each, the third, fourth, fifth, and sixth, was sustained. A trial was had before the court upon the issues joined upon the petition, answers of general denial, payment, and set off; and, upon

a special finding of facts and conclusions of law favorable to appellee, judgment was rendered against appellant that he pay to appellee, on account of said omitted taxes, the sum of $46,996.69.

The errors assigned call in question the authority of the auditor to assess omitted property of this estate; the sufficiency of the complaint; the sufficiency of the third, fourth, fifth, and sixth paragraphs of answer; the correctness of the conclusions of law; the constitutionality of §8560 Burns 1894; the overruling of appellant's motion for a modification of the special finding and for further statement of conclusions of law, and for a new trial. The questions will be considered in such general groups as appellant has seen proper to present them.

The auditor proceeded under §8560 Burns 1894, which, among other things, provides: "But before making such correction or addition, if the person claiming to own such property, or occupying it, or in possession thereof, resides in the county and is not present, he shall give such person notice, in writing, of his intention to add such property to the tax duplicate, describing it in general terms, and requiring such person to appear before him at his office at a specified time, within five days after giving such notice, and to show cause, if any, why such property should not be added to the tax duplicate."

Appellant insists that the proceedings of the auditor under this section were unauthorized and void, for the reason that he was not a resident of the State of Indiana, and that the notice to him to appear before the auditor, being unprovided for by the statute, was ineffectual as a legal notice; and that, notwithstanding his appearance under objection and protest, the question must be determined as if he had received no notice, and was not present when the auditor considered and added such alleged omitted property. We are unable to yield our assent to appellant's contention. The official residence of the executor, so far as the taxation and administra-

tion of the assets in his possession were concerned, was in Marion county. As a trustee of the property, he had his creation by the Marion Circuit Court, and had no existence or authority outside of said county, except as he drew it from the court of his appointment. In contemplation of law, he is ever present and officially resident in the Marion Circuit Court during the pendency of his trust, and required, without notice, other than presentation, to answer to every sort of claim or demand, within the jurisdiction of the court, asserted against the assets in his hands for administration. He is an officer of the circuit court of Marion county, in possession of property located in and subject to taxation within the taxing district of said' county, and while present in the county, engaged in exercising his office and administering his trust, invoking the aid of the law, and subject to its mandates, he was in his official capacity such a resident of Marion county as comes within the purview of §8560, and amenable to our taxation laws, so far as they affect his trust, in the same manner as if his personal residence had been in the county. It follows, therefore, that the auditor had sufficient authority to proceed to place upon the tax duplicate any omitted property of the estate that had escaped taxation.

It is next contended that §8560 is in violation of §2 article 4 of the Federal Constitution, and of the 14th amendment thereto, and of §12, article 1 of the Constitution of the State of Indiana, and, therefore, void in so far as it attempts to provide for the assessment and taxation of omitted property owned by nonresidents of the State, without affording such nonresident owners notice, or a day in court, while such right is accorded to resident owners; that it is a denial of equal privileges and immunities to citizens of the several states; that to nonresidents it is a taking of property without due process of law. A sufficient answer to this is that appellant was an official resident of Marion county at the time the proceeding by the auditor was commenced, and, therefore, within the express terms of the section. He was in a

situation to avail himself of all the rights and privileges he asserts are unjustly denied to nonresidents, and, while himself not aggrieved, he will not be permitted to assail a revenue statute on behalf of others who are making no complaint. The courts are open to those only who are injured. *Gustavel* v. *State*, 153 Ind. 613; *Pittsburgh, etc., R. Co.* v. *Montgomery*, 152 Ind. 1; *Currier* v. *Elliott*, 141 Ind. 394, 407.

Conceding all that appellant affirms concerning his residence and the absence of any provision in §8560 for service of notice on nonresidents, still, he is not in a situation to complain that he has had no day in court. The assessment by the auditor, right or wrong, was not a final judgment. It was only *prima facie* correct. The courts were open to appellant, even though a nonresident, to challenge it by injunction. Failing thus to seek relief against it, the treasurer appealed to the circuit court for an order against him to show cause why he did not pay the taxes. The jurisdiction of the circuit court over its executor will not be controverted, even though his personal residence is in New Hampshire. He was ordered by the court to show cause, if he had any, why he did not pay the taxes. In response to the order, any defense he had, or ever had, was open to him.

It is no longer an open question in this State that if a party, against whose property an assessment has been made, is, at any time in the course of the proceeding, before a conclusive judgment, afforded by law an opportunity to contest its correctness, he is accorded due process of law within the meaning of the fourteenth amendment. *Garvin* v. *Daussman*, 114 Ind. 429; *Johnson* v. *Lewis*, 115 Ind. 490; *Kizer* v. *Town of Winchester*, 141 Ind. 694; *Edwards* v. *State*, 143 Ind. 84. See also *Davidson* v. *City of New Orleans*, 96 U. S. 97, 24 L. ed. 616; *Hagar* v. *Reclamation Dist.* 111 U. S. 701, 4 Sup. Ct. 663, 28 L. ed. 569. Moreover, the right to tax property is a sovereign right reserved to the jurisdiction charged with the duty of its protection; and the authority of a taxing district to require all classes

of property sheltered by it to pay their ratable proportion of the expenses of maintaining the government is unaffected by the residence of the owner. The legislature has plenary power to create a tax for public revenue against all property located in the State, and to provide the procedure for its levy and collection. This had been done by public laws of which all persons, residents and nonresidents alike, must take notice and conform thereto without special summons. The State can not be deprived of the tax because the owner is a resident of another State. *Buck* v. *Miller*, 147 Ind. 586, 596, 37 L. R. A. 384; *Board, etc.,* v. *Reeves,* 148 Ind. 467, 476; *Chicago, etc., R. Co.* v. *John,* 150 Ind. 113; *Graham* v. *Russell,* 152 Ind. 186.

Appellant next contends that the action by the treasurer of Marion county, commenced the next day after the omitted taxes were placed upon his duplicate, in the then running term of the circuit court, was prematurely brought, under §8587 Burns 1894. This statute provides that it is the duty of an executor to pay the taxes due upon the property of his testate, and, if he neglects to pay the same, the county treasurer shall present to the circuit court, or other proper court of the county, at the next term thereafter, a brief statement, in writing, setting forth the fact and amount of such delinquency, and such court shall at once issue an order to such delinquent, commanding him to show cause within five days why such tax should not be paid, and, upon his failure to show good cause, the court shall order him to pay such taxes from the assets in his hands. The position of appellant is that the treasurer had no authority of law to proceed in the circuit court until the next term after appellant had refused to pay the taxes due; that the words "next term thereafter" must be held to mean the term occurring next after the expiration of the one then running. The substance of the insistence is that the statute is mandatory, and the right of the treasurer to proceed thereunder, being created thereby, must be limited to the strict letter of the law. But why

should the statute be held mandatory in respect to the bringing of the action at the next term thereafter? Is there any apparent reason behind it that warrants such a restriction upon the power of the treasurer? The evident purpose of the statute is to aid in the collection of public revenue, and must be liberally construed. It is directed against a fiduciary who refuses to perform a positive duty, and who is entitled to no indulgence under any known principle of the law.

The rule relating to such questions, reasserted by this court in *Wampler* v. *State*, 148 Ind. 557, at page 568, 38 L. R. A. 829, and which had been previously approved in at least five appeals cited therein, follows: "Where a statute specifies the time within which a public officer is to perform an official act regarding the rights and duties of others, it will be considered directory merely, unless the nature of the act to be performed, or the language used by the legislature, shows that the designation of the time was intended as a limitation of the power of the officer." It can not be said that the words employed in §8587 Burns 1894 show that the legislature intended that the treasurer should proceed in the next term thereafter, or not proceed at all; that is, that it was intended his power in that respect should be confined to and exhausted at a particular term. There are no words that he shall not proceed at a term subsequent to the "next term thereafter," or that he may, or that he shall not proceed at a current term; and when we consider that the object of the statute was to furnish a speedy and convenient remedy against a delinquent fiduciary, and that the ultimate purpose could not be fulfilled until the taxes withheld were actually paid, it seems unreasonable that the legislature should intend to confine the benefits of the remedy to a particular term of court. It seems clear that the purpose of the statute was to furnish a summary remedy against a delinquent officer of the court. The statute reads that it shall be the duty of every executor to

pay the taxes due upon the property of the deceased, and, in case of his neglecting to pay any instalment when due, when there is money on hand to pay the same, the treasurer shall present the fact to the court at the *next* term thereafter, that is, at the term standing nearest to the default,—the first opportunity,—and such court *shall at once* issue an order commanding such executor to show cause within five days why such taxes should not be paid. Such defaulting officer is not to be treated as an ordinary litigant, for such court shall at once command him to account for his conduct within five days. The reasonable view of the statute seems to be that, in proper cases, the duty of the treasurer to bring the action is imperative; but, in so far as it prescribes the time when it should be brought, the statute is directory only. *Sackett* v. *State*, 74 Ind. 486, 489.

It is a rule of procedure, as old as our jurisprudence, that a plaintiff may bring his suit as soon as his right of action accrues, but whether he shall proceed with it depends upon whether he has given the defendant such notice as the law requires; and if the service of notice upon the defendant is insufficient in point of time for the term at which the suit is brought, the only penalty is a continuance, by operation of law, to the next term when the service becomes valid. *Eastes* v. *Eastes*, 79 Ind. 363. Whether the defendant is required to answer at the term current does not affect the right of the plaintiff to bring his suit, and, if the action is stayed a sufficient time to make the notice legally sufficient, it is all a defendant is entitled to.

In this case the taxes had been assessed, placed, and extended upon the duplicate, were due, and appellant had refused to pay them. The right of action was fully matured when the complaint was lodged in the circuit court, and while the record shows that appellant appeared to the action thirteen days afterward, and moved a dismissal of the complaint, the record also further shows that no action was taken by the court, or requested by appellee, for more than

two years afterward, which would seem to be sufficient time in which to prepare a defense. We therefore hold that the bringing of this suit by the treasurer in the current January term was authorized by §8587, *supra*, and a stay of proceeding until after "the next term thereafter" removed from appellant all possible ground of complaint.

The case of *Ledyard* v. *Dix* (Mich.), 79 N. W. 918, so vigorously urged upon our consideration as holding a contrary doctrine, can not be accepted as a support to appellant's contention. Under the statute of Michigan (Act 206, 1893, §62), when the auditor-general filed his petition in the circuit court for a decree of sale of lands returned delinquent in the payment of taxes within the county, it became the duty of the court to make an order upon the petition designating the term of court at which the petition should be heard, and that "all persons interested in such lands, * * * desiring to contest the lien claimed thereon by the state of Michigan for taxes, * * * shall appear in said court and file with the clerk * * * their objections thereto, *on or before the first day of the term* of this court above mentioned, [that is, the term designated in the order] and that in default thereof the same shall be taken as confessed". The statute further provides that, in lieu of personal service, a copy of said petition and order entered thereon shall be published in a newspaper of the county for four weeks, and that at the opening of the court, at such fixed term, the court shall give precedence to the hearing of such petition over all other business. The terms of the court met in September, January, April, and June. In the Ledyard case, the auditor-general filed his petition September 25, 1895, in the running September term, and two weeks after it had commenced; and, instead of making it returnable on the first day of the next term, as the statute expressly provided it should be, it was made returnable, and a decree of sale entered, upon a subsequent day of the same term. The subject under consideration related purely to the question of

process, and to the inviolability of the length of notice, fixed by statute, that should be given a defendant to appear and plead to the action, concerning which the court says: "It is apparent that §62 gives the right to a property owner to have until the commencement of the next term after the petition is filed to make his contest. It is an axiom of law that a litigant is entitled to his day in court. * * * If he watched the columns of the paper designated as the one in which the notice of hearing was to be published, until the commencement of the term of court, and no notice of the hearing of tax cases for that term is published, has he not a right to assume that no hearing will be had until a subsequent term?"

The amount claimed by appellee to be due on account of delinquent taxes, penalty, and interest was $61,233.59. It was alleged in the complaint that said executor had on hands $50,000 in money, and $350,000 in negotiable bonds and other securities readily convertible into money at their face value. Appellant contends that the demurrer to the complaint should have been sustained for failure to show enough money on hands with which to pay the taxes, as provided by said §8587. The amount demanded in the complaint included penalty and interest upon the several years' delinquencies, which the court found appellee had no right to recover, and failed to note the credit of $5,750 paid before suit, as shown by the special finding; and plaintiff's recovery was less than $50,000. Hence the averment in the complaint that the plaintiff was entitled to recover $61,000 was incorrect, and if the complaint was insufficient upon its face, —which we need not and do not decide,—the overruling of the demurrer thereto was harmless. State v. Julian, 93 Ind. 292-295; Bartlett v. Pittsburgh, etc., R. Co., 94 Ind. 281.

Finally it is contended that the method of making the assessment was illegal, and that the result reached was arbitrary and uncertain, and not supported by competent evidence.

The record discloses the following facts:    During the thirty years' residence of the deceased, William P. Gallup, in Indianapolis, he had been a dealer in grain, in county and city bonds, and a lender of money on notes and mortgages, and for most of the time from 1881 to 1893 inclusive had been engaged in the business of banking, loaning money on mortgage securities, chiefly outside the county of his residence, and in investing in government and municipal bonds, and occasionally dealing in grain.   It does not appear that at any time after 1880 he made or lost any large sum of money, or acquired any by gift or descent, or that his fortune in any way fluctuated in value or amount.   That for the years 1881 to 1893, inclusive, he returned to the assessor of Marion county for taxation personal property amounting in the aggregate as follows:   For the year 1881 $24,090; for the year 1882 $20,630; for the year 1883  $20,015; for the year 1884 $18,720; for the year 1885 $17,160; for the year 1886 $15,740; for the year 1887 $13,845; for the year 1888 $14,475; for the year 1889 $16,475; for the year 1890 $16,745; for the year 1891 $18,180; for the year 1892 $19,490; for the year 1893 $20,560.   That at the time of of his death, in December, 1893, he left a personal estate appraised and of the value of $492,628.26, consisting principally of stocks, bonds, notes, and mortgages, including government bonds appraised at $43,600, bank stock appraised at $65,152.50, and household goods, live stock, and other articles appraised at $1,500; that his brother, Edward P. Gallup, qualified as executor on the 4th day of January, 1894, and in the spring following, as such executor, returned to the assessor of Marion county taxable personal property belonging to said estate amounting to $383,906.46 consisting of stocks, bonds, and notes, household goods, horses, harness and carriage; that within two months after his appointment, to wit, February 27, 1894, appellant, as executor, paid to the treasurer of Marion county, on account of omitted taxes, for the years 1893, 1892, and 1891, the sum of $5,750,

without any previous assessment of omitted property having been made or reported to the auditor or placed upon either duplicate; that for many years Edward P. had been a resident of Marion county, engaged in business with his brother, William P., and since his removal to New Hampshire a frequent visitor to his brother William, and for many years and to the present, a joint owner with the deceased of valuable real estate in Indianapolis; that the deceased was never married, and by his will gives his entire fortune to appellant, except $4,500, and some trifling charges; that the relations between the brothers were close and intimate.    Edward P. testified before the auditor that his brother had kept no books or record of his business, to his knowledge, except possibly a meager account upon five cent memorandum books that disclosed no important information, and which he had not deemed of sufficient importance to preserve, and did not now have any of them; that prior to his brother's death he did not have any knowledge or information about his brother's estate in character or amount; that, twenty years before, his brother might have told him what he had, but he had forgotten the amount stated, and though requested and urged by the auditor to furnish data and information, he declared his inability to do either.

With the facts before him the auditor proceeded to make an assessment of omitted property, by taking the amount of taxable personal property returned by the executor in the spring of 1894 as a basis.    From the amount thus returned, namely, $383,905, he deducted five per cent. as the probable net annual increase, and the result thus reached he took as the true amount for 1892, and from this amount he deducted a like five per cent., and took the result for the correct amount for 1891, and so on, back to 1881, deducting also from each result the amount returned by the deceased for that year.    He also credited the estate by the $5,750 paid by the executor in February, 1894, by deducting $150,000 from the total assessment for 1893, $100,000 from 1892,

and $100,000 from 1891, the rate of taxation for these several years, counted upon these several sums, producing the amount of $5,750. The assessment of omitted property thus made by the auditor was: For the year 1881 $171,010; for the year 1882 $184,575; for the year 1883 $195,995; for the year 1884 $208,657; for the year 1885 $222,184; for the year 1886 $236,201; for the year 1887 $251,356; for the year 1888 $264,683; for the year 1889 $277,365; for the year 1890 $292,560; for the year 1891 $207,404; for the year 1892 $223,230; for the year 1893 $190,880.

The auditor concedes that the result reached by him was, in a measure, an arbitrary deduction from facts of record and recognized rules of business, and that he had no positive evidence before him that the amounts stated by him were entirely accurate. But this is not sufficient to overthrow the judgment. Tribunals are not infrequently called upon to determine questions of fact upon evidence as unsatisfactory as that before the auditor. The fact that there had been an omission to list all of his property for taxation, we think, was well established, beyond peradventure. For the thirteen years covered by this suit the amount listed by the decedent was about the same for each year,—a little more in 1881 than in any subsequent year. In April, 1893, he gave to the assessor, as being all of his taxable personal estate, $20,560. Upon his death, nine months later, his personal property is shown to be $492,628 in value, $383,906 of which, a few months later, was listed by the executor as taxable property, composed chiefly of municipal bonds and notes secured by mortgage, some running back in date to 1885. The executor, in his testimony before the auditor, estimated that these securities would average six per cent. interest. The reluctance manifested by the executor to assist the auditor in arriving at true results is to be deplored. And it is not apparent from his testimony why he deemed it proper, within two months after his appointment, and before any controversy had arisen over omitted property, and

before any had been assessed or placed upon the duplicate, to voluntarily pay to the treasurer, on account of omitted property, $5,750.   What was the source of the information that prompted him to act?   According to his testimony, he knew nothing whatever about his brother's estate prior to his death, and no records or books had come to his knowledge to furnish such information.   It is most extraordinary that so large an estate, invested chiefly in county and city bonds, notes and mortgages, embracing a large number of items, with interest and principal maturing on many different dates, could be successfully managed without the use of records; and if, by this departure of the decedent from the ordinary methods of business, and his strange reserve in his intercourse with his most trusted brother and chief beneficiary, he kept the amount and character of his estate in previous years concealed, with the probable purpose of escaping taxation, when it is affirmatively shown that a large portion thereof did so escape, his representative is not in a situation to demand strict proof.   The payment by appellant of the $5,750, as taxes, was confession that property liable to taxation had been previously omitted, and, considered with the other facts disclosed by the public records, made a *prima facie* case, and justified the auditor in finding the existence of omitted property.   This fact once established, in the ascertainment of the amount the auditor was warranted, in the absence of better evidence, in considering the rate of interest carried by the securities on hand, and that usually borne by such securities and investments as the evidence showed the deceased had been dealing in for many years, the general character of the decedent's business, the absence of any evidence of unusual or great gain or loss during the controverted period, the amounts given in by the decedent for taxation in each year, and, from all these facts and data, assessing such reasonable amounts as were warranted thereby. *Saint* v. *Welsh*, 141 Ind. 382.

The assessment made by the auditor is presumed, in this

proceeding by the treasurer, to be correct, and must stand if not overthrown by a preponderance of the evidence. Section 8642 Burns 1894; *Buck* v. *Miller*, 147 Ind. 586, 599. We are not convinced that a preponderance of the evidence is with the appellant.

It follows that appellant is not entitled to a reversal.

Appellee, however, insists that the judgment should be reversed for errors of the court, upon which he has made a proper cross-assignment. Three points are made upon the cross-assignment complained of, namely: (1) That the court below erred in allowing appellant a double credit for the sum of $5,750 voluntarily paid by him to the treasurer of Marion county on account of omitted taxes for the years 1891, 1892, and 1893, before any assessment of omitted property had been made, or attempted, by any authorized officer. (2) That the court erred in disallowing, as against the taxes on the omitted property assessed and placed upon the duplicates by the county auditor for the several years from 1881 to 1893, inclusive, the penalty provided by law for the nonpayment of taxes. (3) That the court erred in disallowing interest on the taxes against the several amounts assessed as omitted property from the date the several delinquencies would have occurred if the property had been duly and timely listed by the decedent.

In respect to the first point, it clearly appears, both from the evidence and special finding, that the county auditor, having first determined the amount of taxable property that had been omitted by the decedent for each of the years from 1881 to 1893, inclusive, deducted from the amount so found for the year 1893 $150,000, and for each of the years 1892 and 1891 $100,000, the said sums computed by the tax rate for the three several years, producing the aggregate of of $5,750, the amount theretofore voluntarily paid by appellant on account of omitted property; and that there was in fact placed upon the duplicates for taxation only the balance for each of said years remaining after these deductions

had been made. These deductions were evidently made by the auditor on the theory that the taxes on these sums, for these years, had been paid, and, for that reason, and to that extent, there was, when he came to make the assessment, no omitted property. And this was right. Therefore, assuming that the auditor's method of assessment was legal, it is apparent that the estate was fully credited by him with the $5,750, by a reduction of the taxable amount shown by his calculations, of a sum that would produce the amount of the credit at the tax rate of the several years specified. And surely this was all the estate is entitled to.

The sixth specification of the special finding is to the effect that, after the death of William P. Gallup, his execu- tor, Edward Gallup, in February, 1894, paid to the then treasurer of Marion county, on account of omitted taxes, the sum of $5,750, and no more; and that, prior to such pay- ment, no assessment of omitted property had been made by any authorized officer, nor had any such assessment ever been reported to the auditor, or entered upon the records; and, by the tenth, it is found "that said William P. Gallup, in addi- tion to the property that had been returned by him for taxa- tion, *and in addition, also, to the property* for and on account of which the taxes had been, as aforesaid, paid by said Gal- lup, as executor, to the treasurer of Marion county", was the owner of moneys, bonds, etc., amounting, in 1891, to $207,- 404, in 1892 to $223,230, and in 1893 to $190,880; "and that the taxes due and owing by said William P. Gallup upon said omitted property so owned and held by him, dur- ing the years 1881 to 1893, inclusive, so charged upon the tax duplicates by the auditor, exclusive of all interest and penalties provided by law, by reason of failure to pay the first instalment thereof", amounts, in the aggregate, to the sum of $52,746.69, "subject, however, to a credit of $5,750, being the amount paid to the treasurer of Marion county, as hereinbefore in finding number six stated, leaving the net balance, due and owing, the sum of $46,996.69." And the

fourth conclusion of law is as follows: "Said Gallup, as such executor, is entitled to a credit upon the taxes levied upon the omitted property, aggregating $52,746.69, of $5,750, by reason of the payment of that sum to the treasurer of Marion county, on account of omitted taxes, and *this, notwithstanding the fact* that in making the assessment of said omitted property the auditor had allowed to said defendant, in ascertaining and determining the amount of said omitted property, a credit for said sum of $5,750."

We do not perceive the ground upon which this conclusion can be sustained. It expressly asserts that appellant is entitled to the double credit. If the auditor's method of assessment, as shown in this opinion, and as adopted by the trial court, was legal, the result correctly reached should be accepted *in toto.* If the method was illegal, it should have been rejected altogether. We know of no principle of law or rule of procedure that will allow a court, in determining a question of right, to ameliorate the harshness of a judgment by an unwarranted reduction, or by the arbitrary allowance of dual credits. There is no force in the suggestion that credits can only be applied to liquidated demands, and that there existed no basis for credit until the omitted property had been legally assessed and placed upon the tax duplicates, for it must be borne in mind that the executor's payment to the treasurer was eleven months before the auditor entered upon this proceeding to assess omitted property; and if at the time of payment it was tendered by the executor, and accepted by the treasurer as a payment upon taxes owing, but unliquidated, against omitted property of the estate, there can exist no reason why it should not be applied in discharging such property *pro tanto,* and, so far as thus discharged, there remained no ground for its assessment as omitted property. As we have held the auditor's method of assessment was legal, and his allowance of credit to the estate for the $5,750 was all the estate is entitled to, the second credit therefor, by the trial court, was erroneous.

We will consider the second and third propositions together. A tax is not an ordinary debt. It is not founded upon contract, express or implied. It flows from the exercise of sovereign power, and is imposed without the consent of the debtor. It is enforceable summarily, by distress and sale, and without exemption or relief from valuation laws. The right to assess property and levy taxes thereon is given by legislative enactment, upon such limitations and conditions as are imposed by the Constitution. *State* v. *Halter*, 149 Ind. 292, 297. The right to tax and terms of its exercise are therefore inseparable. Furthermore, penalties are not favorites of the law, and can not be granted by implication. We must then find an express warrant in the statute, or deny the contention.

Fourteen sections of the taxation act of 1891 are pointed out as containing the words "taxes, penalties, and interest", "taxes, penalties, interest, and costs", or other words and phrases of similar import, from which it is claimed by appellee that the manifest intention of the legislature was that penalties and interest should be collected in cases like this. The claim has no force, for failure to point to any such words or phrases used in connection with the act of assessment of omitted property by the county assessor, auditor, or treasurer. Section 8531 Burns 1894, provides that when the county assessor shall discover omitted property, he shall list it upon the proper assessor's book in the auditor's office, and the same shall be placed upon the duplicates by the auditor, and the taxes thereon extended and collected as in other cases. By section 8560, when the auditor shall discover such unassessed property he shall proceed to correct the duplicates, and add such property thereto, with the proper valuation, and charge such property, and the owner thereof, with the proper amount of taxes thereon. By section 8600, when the treasurer makes such discovery he shall report the fact to the auditor, whose duty it shall be to correct the duplicates, by adding thereto the assessed valuation of such property.

And the treasurer shall then collect the taxes thereon in the same manner as if assessed by the assessor. In neither of these sections is the officer directed or permitted to add penalty or interest, or do anything more than place the property upon the duplicates, assess its taxable value, extend the taxes against the same, and proceed to collect them as other taxes are collected. Section 8570 provides for voluntary payments, and for the assessment of all the penalties and interest known to the taxation act. It provides that "Any person or taxpayer, charged with taxes on the tax duplicate in the hands of a county treasurer may pay the full amount of such taxes on or before the third Monday in April, or may, at his option, pay the first instalment on or before such third Monday, and the remaining instalments on or before the first Monday of November following; * * * And, provided, further, that in all cases where the first instalment shall not be paid on or before the third Monday in April, the whole amount unpaid shall become due, and be returned delinquent and collected as provided by law, and there shall be a penalty added of ten per cent. upon the amount of any instalment not paid when due, which the persons or property assessed shall pay, together with cost of collection, and, if such taxes remain delinquent at the succeeding first Monday in November, there shall be a penalty of six per centum added to all such taxes that become delinquent at the preceding April and November settlements, and a penalty of ten per centum only shall be added to the current delinquency occuring on the first Monday in November."

In no instance is a penalty assessable, except in default of payment of taxes, when due (under §8570, *supra*), that have been legally assessed and placed upon the tax duplicate in the hands of a county treasurer. As said in *County of Redwood* v. *Winona, etc., Co.*, 40 Minn. 512, 524, 42 N. W. 473: "One thing is very certain; that a penalty in any form can not be imposed until a party is in default in some legal duty. A penalty for the non-payment of a tax can not

be imposed until the person has an opportunity to pay it, and fails to do so." It is a misnomer to call such a charge a delinquent tax. It was not a tax at all until after the assessment and extension were made. Before that time, the claim existed only in the right to tax; and not until molded by the form of law into a fixed charge was it susceptible of demand and exact payment. The assessment and charge may be made for any year, or any number of years, but whenever made it is to be placed and extended upon the current duplicates for collection as other taxes; so says the statute. No penalty is prescribed by the legislature for the failure of the taxpayer timely to list his property, and none can be imposed by the tax officer nor by the courts. *County of Redwood* v. *Winona, etc., Co., supra; Danforth* v. *McCook County,* 11 S. D. 258, 76 N. W. 940; *Elliott* v. *Philadelphia, etc., Co.,* 99 U. S. 573, 25 L. ed. 292; *State* v. *California, etc., Co.,* 13 Nev. 203. We have no doubt but penalties may follow the non-payment of such taxes after they reach the duplicates, as they attach to other taxes under §8570, *supra,* but our attention has been called to no other provision of the statute that imposes them. In respect to the addition of interest to the claim, this court has ruled that only the penalty and interest, called "penalty", provided in §8570, *supra,* can be imposed for delay in the payment of taxes. *Evansville, etc., R. Co.* v. *West,* 139 Ind. 254; *Western Union Tel. Co.* v. *State,* 146 Ind. 54, 60. See also *Western Union Tel. Co.* v. *State,* 55 Tex. 314; *State* v. *Duncan,* 3 Lea 679; *Kentucky Central R. Co.* v. *Pendleton Co.* (Ky.), 2 S. W. 176; *State* v. *Southwestern R. Co.,* 70 Ga. 1, 32.

For error of the court in allowing appellant a credit of $5,750 upon the amount of appellee's recovery, the judgment must be reversed. Judgment reversed, with instructions to restate conclusions of law in accordance with this opinion, and render judgment thereon in favor of appellee for the sum of $52,746.69; the same to draw interest from the date of the finding, to wit, October 31, 1898.