Miller vs. Crawford County.  Wing vs. Same.

Miller, Respondent, vs. Crawford County, Appellant.
Wing, Respondent, vs. Crawford County, Appellant.

*February 27 — March 20, 1900.*

*Counties: Claims: Statement: Disallowance: Appeal: Fish and game wardens.*

1. On an appeal from a county board's disallowance of a claim the county cannot be forced to accept and treat as the original statement of the claim what purports to be a copy thereof and is so designated in the notice of appeal, without proof of loss or destruction of the original and that the alleged copy is a true copy.

Miller vs. Crawford County.   Wing vs. Same.

2. An account for services as local fish and game warden, containing numerous items consisting merely of dates and the names of places, without description of the nature of the services charged for, is not such a statement of the claim as is required by sec. 677, Stats. 1898.

3. Sec. 677, Stats. 1898, providing for the making and filing of written statements as therein prescribed of claims against counties, and that "no such claim . . . shall be acted upon or considered by any county board unless such statement shall have been so made and filed," is mandatory and must be substantially complied with.

4. If the statement of a claim against a county as filed is not in substantial compliance with said sec. 677, it is insufficient as a complaint in the circuit court upon an appeal from the disallowance of the claim.

5. Although the record of the proceedings of the county board states that a claim was "disallowed" for the reason that it was not properly itemized, yet, it being obvious that the board did not pass upon the merits of the claim but merely suspended action until it should be properly itemized, there was no disallowance from which an appeal could be taken.

6. Whether, where no fund has been set apart by the county board for the purpose of enforcing the fish and game law, from which, under sec. 1498d, Stats. 1898, deputy wardens might be paid, the state fish and game warden had power, by appointing deputy wardens pursuant to sec. 1498b, to force an indebtedness or liability against the county, is doubted but not decided.

APPEALS from judgments of the circuit court for Crawford county: GEO. CLEMENTSON, Circuit Judge. *Reversed.*

*O. B. Thomas,* for the appellant.

For the respondents there were briefs by *L. H. Bancroft, G. L. Miller,* and *A. H. Long,* and oral argument by *Mr. Bancroft.*

CASSODAY, C. J.   These two cases are substantially alike, and hence are disposed of together.

In the first case the defendant county appeals from a judgment based upon a verdict for $153 in favor of the plaintiff *Miller.* That case got into the circuit court by virtue of a notice of appeal given by *Charles W. Miller,* December 29, 1898, to the county clerk, stating therein that he thereby

appealed from the decision of the county board of super-
visors of the defendant county, disallowing his claim against
the county, " a copy of which claim " was thereunto attached
and thereby made a part of such notice, so disallowed No-
vember 22, 1898, said claim being for work and labor per-
formed for the defendant by him as deputy fish and game
warden in and for the defendant, in the destruction of seines
and nets, and otherwise protecting the fishing grounds and
fish and game within that county, and performing the gen-
eral duties of such wardens, at the instance and request and
in behalf of the defendant, and for which the defendant was
liable, the work and labor being necessary and proper and
for the interests and benefit of the county, all of which was
fully set forth in the account thereto attached; that the serv-
ices were rendered from June 21, 1898, to November 3, 1898,
and were in the aggregate $153; that the board wholly dis-
allowed said claim and from such disallowance *Miller* ap-
pealed.  Attached to such notice of appeal is a copy of the
account referred to therein, which purports to be for 102
days' services as local fish and game warden at $1.50 per
day, and contains 102 items,[1] and in the case of some of

---

[1] The copy of the account was in the following form:
" Crawford County.
        To Charles W. Miller, Dr.
" For 102 days' services as local fish and game warden at $1.50    $153.00

                    " Itemized Statement.
"1 June 21, with G. L. Miller, Tilmont lake, Black slough, Folsom
bay.
"2 June 22, McGregor lake, Baldwin slough.
"3 June 23, McGregor lake, Baldwin slough, Sunfish S.
·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·
"9 June 30, up Black S., Tilmont, Roseau L.
"10 July 1, in islands, hunters shooting quail.
"11, 12 July 2 and 3, camped at Tilmont L., Big lake, Black slough,
Curville S.
·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·    ·

these items two, three, or four items are put together opposite as many different dates, naming one or more places. At one place there are six dates opposite two items, with nothing to distinguish, except, " With G. L. M., Lynx., and *Wing*, Lynxville, Ferryville, De Soto; " and at another place nine dates opposite three items, with nothing to distinguish, except, " Operating from Prairie du Chien to Lynxville. Destroyed two bait nets."

The return of the county clerk to the circuit court attached to such notice of appeal is to the effect that the within and annexed return was a true statement of the proceedings of the county board in the case appealed from, and that the notice of appeal, bond, and other papers attached were " all the papers in my [his] possession relating to such appeal." The only return annexed to such certificate, besides the notice of appeal and bond, was a pamphlet of thirty-two pages, entitled " Proceedings of the County Board — Annual No-

" 16, 17 July 8, 9, 11, 12, with Wing in sloughs and islands. (See original account.)

" 20, 21, 22 July 13, 14, 15, with Wing and G. L. M. to Lynxville and Ferryville. (See original.)

" 23, 28 July 18, 19, 20, 21, 22, 23, with G. L. M., Lynx., and Wing, Lynxville, Ferryville, De Soto.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

" 49, 50, 51 August 26, 27, 28, operating against hunters.

" 52 September 3, with Wing, burned net and boat in possession of W. Gremore and B. Contell.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

" 84 October 13, Ambarass S, Curville S.

" 85 October 17, Spring lake, Curville S.

" 94 October 18, 19, 20, 21, 22, 23, 24, 25, 26, operating from Prairie du Chien to Lynxville.   Destroyed two bait nets.

" 97 October 27, 28, 29, Big L., Ambarass S.

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .

" 102 November 3, down channel Catfish S.

" Total 102 days.

" CHARLES W. MILLER,
" Local Deputy Fish and Game Warden for Crawford County."

vember Session of that Body for the Year 1898 — The Official Report of its Work." In this pamphlet, under the head of "Report of Committee on General Claims," is the following on page 25: "*Charles W. Miller*, deputy game and fish warden, claimed $153.00. Referred to full board;" and on the same page is the following: "The bills of *Isaac Wing* and *Charles W. Miller*, deputy game and fish wardens, being bills No. 14, 20, and 23, referred to in the report of the committee on general claims, were brought up. . . . The bills were disallowed by a unanimous vote on call of yeas and nays, *for the reason that the bills were not properly itemized*."

In the other case the defendant appeals from a judgment based upon a verdict in favor of the plaintiff *Isaac Wing* for $141, and it appears from the record that it got into the circuit court by virtue of a notice of appeal given by *Isaac Wing*, December 29, 1898, to the county clerk, similar in all respects to the notice of appeal in the *Miller* case, except that the account was for services rendered by *Wing*, as deputy fish and game warden, between November 17, 1897, and November 5, 1898, and no particulars are stated as to what the services were for, or where rendered, but merely giving dates,— as, for instance, nineteen dates in April, 1898, $28.50; ten dates in May, 1898, $15; eleven dates in June, 1898, $16.50; twenty-two dates in July, 1898, $33; and so on,— and the return of the clerk to the same is in every respect similar to his return in the *Miller* case.

It is contended that there was nothing before the circuit court upon which it could act, for the reasons: (1) The account which is claimed to have been presented to the board of supervisors was not returned to the circuit court, but only the notice of appeal, with what purports to have been a copy of such account. (2) If the account presented to the board had been lost or destroyed and it had been proved that such copy was in fact a true copy, still it was not such

a statement of account as was required by the statute. (3) Even if the statement filed had complied with the statute, yet the board never disallowed the same upon the merits, but, as appears from the return, merely refused to act upon the same, "for the reason that the bills were not properly itemized."

The county clerk certified, as he was required by statute, that he therewith returned "all the papers in my [his] possession relating to such appeal." Sec. 684, Stats. 1898. The papers so certified contained no such account, but only what the plaintiff's notice of appeal designated as such copy. The defendant could not be forced to accept and treat such copy as the original without proof of loss or destruction and that it was in fact a copy; and certainly the defendant's counsel consented to nothing upon the trial. If any such loss or destruction was claimed, then a further return to that effect should have been obtained by the plaintiff.

Assuming the copy in the record to be a true copy of the statement presented, the question recurs whether it was sufficient to satisfy the statutes. The statutes prohibited the action from being originally brought in the circuit court, and provided that it could only get there by appeal from the disallowance of the claim in whole or in part. Secs. 676, 682, 683, Stats. 1898. The statute, moreover, provides that: "Every person . . . having any such claim against any county shall make a statement thereof in writing, setting forth the nature of his claim and the facts upon which it is founded, and if the claim be an account the items thereof separately, the nature of each and the time expended in the performance of any service charged for, when no specific fees are allowed therefor by law, and, if the claim be for mileage, the statement shall specify dates and places so as to show between what points and when the travel charged for was had and also the purpose for which such travel was had. Such statement shall be verified by the affidavit of

the claimant, his agent or attorney, and filed with the county clerk; and no such claim against any county shall be acted upon or considered by any county board unless such statement shall have been so made and filed." Sec. 677. Manifestly, neither of the claims in question is accompanied by a copy of such statement — much less such original statement.

But it is claimed that, however indefinite and uncertain the statement filed may have been, yet it was sufficient to give the board jurisdiction; and hence that an appeal from its action was sufficient to give the circuit court jurisdiction. In some early cases, when the statute was substantially different than at present, certain features of the then-existing statute were held to be merely directory. *Parker v. Grant Co.* 1 Wis. 414; *Eaton v. Manitowoc Co.* 40 Wis. 668. In a more recent case, in an opinion by Mr. Justice LYON, this court, in view of the change in the statute, expressly left it undetermined whether the failure to comply with that section in making such statement "did not go to the jurisdiction of the board to allow an account not thus itemized and verified." *Outagamie Co. v. Greenville*, 77 Wis. 171. And in that case it was expressly held that, where accounts are not properly itemized as required by that section, their allowance by the county board was not binding upon the town. *Id.* The section quoted expressly declares that "no such claim against any county shall be acted upon or considered by any county board unless such statement shall have been so made and filed," and hence is more imperative than the statute simply requiring a bond to be given on appeal from the decision of the county board. Secs. 683, 684, Stats. 1898. And yet it has been held by this court, under a similar statute requiring a bond to be given on appeal from the decision of the common council, that the failure to give such bond, or the giving of an insufficient bond, would prevent the circuit court from acquiring jurisdiction. *Drink-*

*wine v. Eau Claire*, 83 Wis. 428.  The manifest purpose of the statute requiring such statement was to protect the public funds and taxpayers of the county from the reckless, negligent, or improvident action of county boards.  We must hold that the language of the statute is mandatory and must be substantially complied with.  Where the statement filed with the county board is insufficient, or indefinite and uncertain, the board may, undoubtedly, require it to be made more definite and certain, or to conform to the requirements of the statute, before allowing or disallowing it in whole or in part.  *Eaton v. Manitowoc Co.* 40 Wis. 668; *French v. Dunn Co.* 58 Wis. 402.  This court has held that, where the account filed is in form and substance as required by the statute, it is sufficient as a complaint on appeal to the circuit court.  *Grimm v. Jefferson Co.* 62 Wis. 572.  The converse of the proposition would seem to be that if it is not substantially as required by the statute, then it would be insufficient as a complaint.

In the case at bar the return states that "the bills were disallowed . . . for the reason that the bills were not properly itemized."  Notwithstanding the use of the word "disallowed," yet it is obvious from its connection with what follows that the board did not pass, nor attempt to pass, upon the merits of the bills,— much less to disallow the same, but merely suspended action until such bills should be properly itemized.  In other words, the bills not having been disallowed in whole or in part, there was nothing to appeal from.

It is claimed that each of the plaintiffs was appointed "deputy fish and game warden" for the defendant county under sec. 1498*b*, Stats. 1898, and acted as such during the times in question.  That section, as it then stood, was silent as to authority from the county board to make such appointment.  The section has since been amended so as only to allow such appointment to be made when authorized by resolution of the county board.  Sec. 2, ch. 312, Laws of 1899.

But before that amendment, and at the time of the appointment of the plaintiffs, respectively, the statute provided that: " The deputy wardens appointed in any county shall be paid by the county for which they shall be appointed *out of any fund set apart for the purpose* of enforcing the fish and game law; their compensation to be fixed by the chairman of the county board and the county clerk of such county." Sec. 1498*d*, Stats. 1898. This would seem to suggest the necessity of authority from the county board. It is in evidence in each of these cases that up to January, 1899, no fund had been set apart by the county board for the purpose of enforcing the fish and game laws. Such being the facts, we have a very grave doubt of the power of the fish and game warden, upon the recommendation of the officials named in sec. 1498*b*, to force an indebtedness or liability against the county, without the consent and authority of the county board. Had such fund been set apart for such purpose, such authority might, perhaps, have been implied. But such deputy wardens were only to be paid " out of any fund set apart for the purpose," and hence it may be inferred that, until such fund is so set apart, there is no liability. But the question was not argued, and we refrain from deciding it.

*By the Court.*— The judgment in each case is reversed, and the cause is remanded for a new trial.