Town of Spooner, Respondent, vs. Washburn County, Appellant.

*January 11—January 31, 1905.*

*Taxation: Collection of delinquent taxes: Accounting between county and town: Power of county board: Supervisor as representative of town: Amount due the county: Taking of tax deeds: Compromise of taxes: Invalid taxes: Costs of action: Interest.*

1. A county board cannot, by a mere resolution instructing the treasurer to balance all accounts between the county and the several towns therein, settle or discharge the claim of a town for money collected by the county for delinquent taxes.
2. To give the county board jurisdiction of such a matter, a claim in appropriate form must be presented on behalf of a town, and the town must be given an opportunity of prosecuting its demand and of taking an appeal from a decision adverse to it.
3. The supervisor from a town, while acting in his capacity as a member of the county board, cannot be deemed to represent or

stand in the place of the town in a capacity adverse to the county. *Outagamie Co. v. Greenville,* 77 Wis. 165, distinguished, and language used therein disapproved.

4. The amount "due the county for unpaid county taxes," within the meaning of sec. 1114, Stats. 1898, is the sum which equals in amount the county tax, with interest allowed thereon by statute, and all the fixed charges and necessary expenses allowed by law, including those incurred by the county for illegal assessments embraced in the delinquent return, and the five per cent. collection fees on all amounts actually collected by the county; and all sums collected on delinquent taxes in excess of said amount belong, with the interest and charges thereon, to the town, city, or village from which such taxes were returned as delinquent.

5. Though the purchase of land by the county at a tax sale is not a collection of the tax within the meaning of sec. 1114, Stats. 1898, yet the taking of a tax deed, vesting the title in the county and giving it full power of disposition, is such collection, and the county is chargeable in such a case with the redemption value of the tax certificate at the time the deed was executed, and for the redemption value of outstanding tax certificates on the land, as well as all subsequent taxes remaining unpaid which were levied while the county owned the land.

6. Where the county board, without authority of law, and not under secs. 1155, 1184, or 1210*g*, Stats. 1898, "compromised" or "canceled" unpaid delinquent taxes or ordered that outstanding certificates be transferred at less than their face value, the county is chargeable with the face value of the tax, interest, and charges up to the date of such compromise, cancellation, or transfer.

7. Where a town returned as delinquent certain taxes on railroad lands, and in an action by the railroad company such taxes were declared void, the costs for which judgment was rendered against the county in such action were a necessary expense for which it should be reimbursed out of moneys collected on the delinquent return of the town.

8. The account between a county and a town in respect to delinquent taxes collected by the county is analogous to an open account between persons, and the county is liable for interest on any amount due the town only after failure, upon due demand, to pay the same.

APPEAL from a judgment of the circuit court for Washburn county: A. J. VINJE, Circuit Judge. *Reversed.*

This is an action by the town of *Spooner* against *Wash-*

*burn* county to recover on account of collections on delinquent taxes returned by the town to the county. The town filed its claim with the clerk of defendant, demanding payment of the amount due it from the county for collections of delinquent taxes in excess of the amount due thereon to the county. The claim was presented to the county board of supervisors on March 15, 1900, and was on this day wholly disallowed by them. The town duly appealed from such action of the board to the circuit court for *Washburn* county.

While the action was pending in circuit court it was referred to T. H. Woolford, an officer of the court, to hear, try, and determine the issues. In the proceedings taken before the referee the complaint was amended and issue joined thereon. The answer set up a resolution of the county board of December 28, 1898, which was recorded as follows:

"Motion made and carried that the county treasurer be and is hereby instructed to balance all accounts as between the several towns and the county up to and including Dec. 31st, 1898. Recorded vote unanimous."

Upon the evidence adduced before the referee, the court directed a modification of the report and findings of the referee. The court found and determined that plaintiff was a duly organized town, and defendant a duly organized county; that the county from 1890 to 1898 inclusive, annually, duly levied taxes against the town of *Spooner* in the sums specified; and that the town duly levied the same upon all of the taxable property of the town. The findings specify the various sums of money paid to the town by the county throughout the period of these transactions, and the sums of money paid by the town to the county as state and county taxes. The amount of delinquent taxes, exclusive of fees, returned annually by the town to the county on real estate and personal property, is found in gross amounts, and the collections thereon by the county, exclusive of fees or interest; such sums embracing whatever was collected in cash before sale, and the

amounts realized from certificates sold at tax sales, and from certificates sold and assigned after tax sale, and from certificates redeemed while held and owned by the county. . The court charged the county with the gross sum of $1,995.46, the amount realized out of the settlements for certificates declared illegal by the court. The amount actually realized on sales of lands which had been tax-deeded to the county is charged against the county as due the town. It appears that the county board compromised and remitted to various persons amounts due for taxes which had been returned delinquent. Such action was disregarded by the court, and the full amount of the taxes involved in such compromises was charged to the county. No part of the uncollected personal property tax is charged against the county. The amounts of expense incurred and paid by the county for certificates marked "Void" by the county records, and on land tax-deeded to the county, including fees for the collection, and for publication of tax-sale notice, and for notice of expiration of time for redemption and certificate fees, are ascertained and specified. It also appears that the county paid the sum of $104.35 as costs in an action by the Chicago, St. Paul, Minneapolis & Omaha Railway Company against the county, wherein tax certificates which had been issued for delinquent taxes were declared void. The court excluded all school-tax items, as not properly embraced within the transactions arising out of the delinquent tax return.

As a result of the accounting made by the court, it appeared that defendant had money in its possession, collected by it as delinquent taxes in excess of the amount due thereon, in the sum of $5,802.73, with interest, for which judgment was awarded the town, together with costs and disbursements. From this judgment, defendant appeals. Facts material to this controversy not stated above will be given in the opinion.

*L. H. Mead,* for the appellant.

*K. K. Kennan,* for the respondent.

SIEBECKER, J.   1. It is insisted by the county that any and all claims of the town of *Spooner* embraced in this action were settled by the county board, as evidenced by the resolution of December 28, 1898.   This resolution declares "that the county treasurer be and he is hereby instructed to balance all accounts as between the several towns and the county up to and including Dec. 31st, 1898."   The record gives no information as to this transaction, other than is disclosed by the context of the resolution, and we are not informed upon what grounds the county board acted in performing the extraordinary public function by which it assumed to discharge and free the county from all legal demands which were then held by towns against it.   It is not shown by the evidence that the towns, or any one of them, had presented claims for the consideration of the board, nor does it appear what claims and demands were in fact embraced and covered by this action of the board, nor does it appear that the board knew or attempted to ascertain the state of the accounts between it and the towns.   The action and proceeding of the board are unsupported by any basis in fact warranting this summary liquidation and settlement of all reciprocal demands.   We know of no authority vesting county boards with power to discharge claims of towns for money collected as delinquent taxes in this *ex parte* manner.   Whatever sums the county collects on such taxes, in excess of what is due it under the statutes, shall be returned to the town treasurer for the use of the town.   The right of the towns to any such money cannot be wiped out by the simple declaration of the county board that all such accounts be balanced on the books.   To give the board jurisdiction in this matter, it is necessary that a claim, in appropriate form, be presented in behalf of the town, and that the town be afforded an opportunity of prosecuting its demand and of taking an appeal in case of an adverse decision by the county board.

It is argued that the case of *Outagamie Co. v. Greenville,*

77 Wis. 165, 45 N. W. 1090, is an authority recognizing the
validity of this proceeding.  The subject of controversy in
that case pertained to the allowance of accounts for services
and expense of commissioners appointed to review the county
equalization of assessments.  Under the law, the county board
was authorized to audit and pay these accounts, and, when
so allowed and paid by the county, in the absence of fraud
or collusion, the action of the county board was binding on
the town liable for such charges.  It is clear that the county
board was by law made the auditing body as to these claims,
which made its decision binding on the town liable therefor.
No such authority is vested in county boards as regards lia-
bility to towns for money collected on delinquent taxes.
Counsel place stress on the language used in the opinion in
that case, to the effect that "the town is represented in the
county board by its supervisor, who has, presumably, every
reasonable opportunity to protect and defend its rights in
the matter of allowing the accounts of the commissioners,"
and that "the town is chargeable with notice of the proceed-
ing, and, had it desired to do so, might have contested the ac-
counts."   Such a rule could not apply under the facts and
circumstances of the instant case, since the proceeding wholly
fails to show that any specific claim of any town was under
consideration, to which the resolution could apply.  But were
the declaration of the court applicable to the situation before
us, we would be compelled to decline to follow it.  We cannot
perceive upon what principle it can be held that the town su-
pervisor, while acting in his official capacity as a member of
the county board, is the representative of his town to protect
and defend its rights as to any claims it may have against the
county.   If the county board had occasion to act on any
such demand, the supervisor, if present, acted in his capacity
as member of the county board, vested with authority to
transact whatever business arises within its powers as the
county authorities; and while so acting he cannot be deemed

to be acting for, or standing in the place of, the town, in a capacity adverse to the county. If his presence at such deliberation of the board were to be given this effect, towns would be subjected to an unusual practice whereby their rights might readily be lost, and they be deprived of the usual means of enforcing their demands against the county. *Miller v. Crawford Co.* 106 Wis. 210, 82 N. W. 175; *Northern T. Co. v. Snyder,* 113 Wis. 516, 89 N. W. 460. We are constrained to disapprove the rule stated in the opinion in that case.

2. A number of exceptions are urged upon the grounds that the court has made charges against the county of different items in these transactions without any warrant in the law. The charges so complained of may be grouped as money collected on (1) taxes on land tax-deeded to it, and on tax certificates it holds on such lands; (2) for the face value of certificates on taxes declared delinquent, which the county board remitted in part, and for which it authorized settlements in full; (3) for interest and charges on delinquent taxes collected; and (4) for interest and charges on collections made in excess of the sums due the county for unpaid county taxes, to be returned to the town treasurer for the use of the town. The statement of the accounts as made and allowed by the court upon the transactions embraced in this action is not sufficiently detailed and specific to enable us to restate the account under the rules which we find must control in an adjustment of the reciprocal claims of the town and the county. No attempt will therefore be made to modify and state the account, but the action will be remanded for a restatement of the account under the rules herein declared to be applicable. To do this, the court may be required to take further evidence in the case.

3. Secs. 1112, 1113, Stats. 1898, provide what taxes shall be returned by town, city, and village treasurers as delinquent and doubly assessed, and direct how such returns are

to be made to the county treasurer.  Sec. 1114 provides that
when such return is made, duly verified by the affidavit of
the town treasurer, the "statement and affidavit shall be filed
with the county treasurer; and he shall thereupon be credited
by the county treasurer with the amount of taxes so returned
as unpaid and doubly assessed, except the five per cent. col-
lector's fees."  It further provides that "all taxes so returned
as delinquent shall belong to the county and be collected with
the interest and charges thereon for its own use; . . . but if
such delinquent taxes, exclusive of the five per cent. collection
fees, exceed the sum then due the county for unpaid county
taxes, such excess when collected (with interest and charges
thereon) shall be returned to. the town, city or village treas-
urer for the use of the town, city or village."  It is apparent
from the terms of this section that the county is to make col-
lections of such delinquent taxes, and, when a sufficient
amount, exclusive of the five per cent. collection fee, has been
collected to equal the amount "due the county for unpaid
county taxes," its claim thereon is satisfied and discharged.
The difficulties that have incumbered these transactions be-
tween towns and counties have arisen upon the question of
what constitutes the amount "due the county for unpaid
county taxes," within the terms of this section.  Is it a sum
which, when collected, equals the amount of the tax levied
as county tax, with interest allowed thereon, or is it a sum
which, when collected, equals the county tax, with interest
and charges on the taxes so collected, or is it a sum which,
when collected, equals the county tax, with interest allowed
thereon, and all the charges incurred by the county in per-
forming the duty of collecting these delinquent taxes?  It is
well established that the county, in performing the duties thus
imposed, acts as collecting agent for the towns.  We find no
good grounds, within the terms and provisions of the statute,
that impose the disbursements, incident to the collection of
these taxes as fixed charges, upon the county.  Nor does it ap-

pear by necessary implication that the expense thus incurred
in performing this governmental duty, primarily resting upon
the town, city, or village, should be borne in part by the tax-
payers of other towns, cities, and villages of the county. By
reasonable intendment, the legislature must be presumed to
have provided a method of collecting taxes under which each
of such political divisions of the county should bear the bur-
dens incident to the collection of taxes assessed upon the prop-
erty within its boundaries. We are therefore led to the con-
clusion that the amount "due the county for unpaid county
taxes" upon such delinquent lists is the sum which equals in
amount the county tax, with interest allowed thereon by stat-
ute, and all the charges fixed by law, and those necessarily in-
curred in performing this public duty. In ascertaining the
state of the accounts between the county and the respective
towns as to the collection upon such delinquent lists, it fol-
lows that "whenever, in the course of collecting the whole
delinquent tax for any given year, the county reaches a point
where it has collected an amount" on the delinquent list equal
to the county tax returned unpaid, with interest allowed
thereon, and all the disbursements incurred by the county by
way of fixed statutory charges and necessary expenses al-
lowed by law, then, and "from that time forward, all collec-
tions made from delinquent taxes on such list, together with
interest and charges thereon, belong to the towns." The items
of charges so incurred by the county, and for which the county
should be reimbursed out of the amount collected, include the
fixed statutory charges and expenses allowed by law, neces-
sarily incurred by it for illegal assessments included in the
delinquent return. The item of five per cent. collection fees
on amounts actually collected by the county, whether for its
own use or for that of the towns, belongs to the county, and is
expressly excluded by the statute from the accounting between
them. *Milwaukee Co. v. Hackett,* 21 Wis. 613.

4. Another question presented pertains to charges against

the county on lands sold for taxes and bid in by the county. It was held in *Iron River v. Bayfield Co.* 106 Wis. 587, 82 N. W. 559, that upon such a purchase by the county it is not chargeable while it so holds the certificates. The legal result of the taking of a tax deed on such certificates by the county was specifically held as not necessarily involved in the decision, and left undetermined. Upon the facts before us, the lower court found that the defendant county had taken tax deeds to a portion of the lands purchased by it at tax sales, and had since sold and conveyed a portion of such tax-deeded lands; and it was held that the taking of such deeds in no way changed the county's liability for the unpaid delinquent taxes, and that nothing became due thereon until the county sold such lands, when it became liable for taxes to the amount it had realized thereon. We think this holding erroneous. While the purchase of lands at a tax sale is enjoined upon the county by statute in cases where no bids are received to the amount of the tax, with interest and charges, the law does not make it obligatory upon the county to take a tax deed and thus become the owner. The taking of a deed to such lands purchased by the county is left to the option of the county board, to be exercised whenever it deems it for the best interest of the county to accomplish the general purpose of collecting, as part of the public revenue, what is due. It is not necessary in this case to consider what the legal effect would be if the county, within the fifteen-year limitation under sec. 1182, takes no deeds upon certificates it holds, and we therefore do not pass upon the question. There is nothing in the statute showing that the county, under such deeds, takes a more restricted or qualified title than individuals would take, nor are there any limitations on its power to deal with the lands as it may see fit. Under similar statutes in other states the deed is held to vest all the interest and title in fee, and gives the county full power of disposition. *Conn. Mut. L. Ins. Co. v. Wood,* 115 Mich. 444, 74 N. W. 656; *Dyke v.*

*Whyte,* 17 Colo. 296, 29 Pac. 128; 2 Cooley, Taxation, 977, 978. The county may therefore dispose of the lands, as sole proprietor, at a price in excess of, or for less than, the redemption value of the tax certificate when the deed was executed. Under such circumstances, it seems within the legislative purpose that the county should be liable to the town as all other purchasers under these circumstances, namely, for the redemption value of the certificate when the land was deeded to the county, and for the redemption value of any outstanding tax certificate on such lands, as well as all subsequent taxes remaining unpaid which were levied while the county owned the land.

5. The court found that some of the taxes returned as delinquent were assailed by legal proceedings as invalid, and that the amounts levied were compromised by order of the court. In all such instances we find the court correctly charged the county with the amount actually collected under such compromise. It appears that the county board, upon application of divers persons, under sec. 1155, made refunds on delinquent taxes. This the court properly credited to the county. In other instances the county board "compromised" or "canceled" unpaid delinquent taxes, or ordered that outstanding certificates be transferred at less than their face value. The court held that such action by the county board was without authority of law, and not within secs. 1155, 1184, Stats. 1898, and charged the county with the face value of the tax, interest, and charges up to the date of such compromise, cancellation, or transfer. This ruling was correct, and within the holding in the case of *Crandon v. Forest Co.* 91 Wis. 239, 64 N. W. 847. There is nothing in the record indicating that these compromises were made as authorized by sec. 1210*g*, Stats. 1898, which empowers the county clerk, county treasurer, and district attorney to compromise taxes returned as delinquent if they shall have good cause to believe such taxes illegal and find a portion thereof is equitably due the county.

6. Exception is taken to the holding of the court in respect
to a number of specified items upon the ground either that
they were improperly omitted as credits to the county, or im-
properly included as charges against the county. The county
claims credit for $22.70, the cost of books and stationery fur-
nished the town. The court refused this credit, and this rul-
ing is supported by evidence tending to show payment. The
county claimed credit for $908.88 as a payment made to the
town, which was refused, evidently upon the ground that the
proof failed to sustain the claim. We find the evidence sus-
tains the court's conclusion. Another claim is that the court
improperly reduced the total amount of the levies of county
tax for 1890 from $3,059.32 to $2,177.79—a difference of
$871.53. This difference appears to arise from an overpay-
ment of taxes by the town of *Spooner* which was refunded to
the town. The court deducted the amount from the delin-
quent return; thus omitting it as a charge against the county
on such return, which therefore required that no credit should
be given on the delinquent list for the refund. Another item
was of $104.55, being the costs paid by the county in an ac-
tion brought by the Chicago, St. Paul, Minneapolis & Omaha
Railway Company to declare void assessments on lands in-
cluded in the delinquent return by the plaintiff town. The
town made the assessment and levy against these lands, and
returned them as valid and delinquent. Under such circum-
stances, it was the duty of the county to seek, to enforce col-
lection, and defend the action wherein the railroad company
sought to be relieved from the tax. Any judgment of costs
ordered against the county in such action is a necessary ex-
pense to be paid by it, and for which it should be reimbursed
out of the money collected on the delinquent return of the
town.

All other errors argued and not separately noted are
deemed to be covered and ruled by what has been stated and
considered. Upon the question of the county's liability for
interest on any excess collected over what is due it on such

delinquent taxes, the liability attaching to demands or mutual accounts seems applicable. These transactions between counties and towns are analogous to an open account between persons. The county is therefore not liable for interest from the date of each collection made for the town, but, whenever the town demands payment of any sum due it which has actually been collected by the county, and such sum is not paid, then liability for interest on the sum due must follow.

*By the Court.*—The judgment is reversed, and the cause remanded with directions for further proceedings as indicated in this opinion and according to law.