10]                · JANUARY TERM, 1920.                13

State ex rel. Houghton v. Phelps, 171 Wis. 13.

---

STATE EX REL. HOUGHTON and others, Respondents, vs. PHELPS, County Clerk, etc., Appellant.

*January. 16—February 10, 1920.*

*Income tax: Law firms and copartnerships: Income earned and expenses incurred prior to December 31, 1911: Salaries to members deductible: Statutory construction: Appeal: Point not presented to trial court.*

1. Words used in a section of the income tax statute must be given their ordinary and usual meaning.
2. A firm or partnership composed of three lawyers, who shared expenses and divided profits, was a "firm" or "copartnership" within the meaning of sub. 1, sec. 1087m—2, Stats., defining the term "person" as used in the income tax statute.
3. Under sec. 1087m—1, providing for the assessment, levy, collection, and payment of a tax on incomes received during the year ending December 31, 1911, and on incomes received annually thereafter, where a large fee earned by a firm of lawyers was paid in 1916, such firm, in returning its income for tax purposes, was not entitled to deduct the amount of expenses in the particular litigation incurred and the proportion of the fee earned prior to January 1, 1911.

4. Under sub. (a), sec. 1087m—4, relators, who had received in 1916 a fee for legal services beginning in 1909, were entitled, in the computation and return of the income of the firm for tax purposes, to a reasonable allowance for services of members actually rendered in producing the income, irrespective of the time when the services were rendered, whether in 1916 or prior years, and to the amount which the firm distributed among its members as their earnings in relation to the particular matter.

5. A point not presented to the court below will not be considered on appeal to this court.

APPEAL from a judgment of the circuit court for Milwaukee county: E. T. FAIRCHILD, Circuit Judge. *Affirmed.*

*Certiorari.* The plaintiffs *F. W. Houghton* and *Neele B. Neelen* were associated in a law practice in the city of Milwaukee prior to 1909, and in that year the relator *Albert B. Houghton* became also associated with them and the three continued such practice thereafter. Each individual has his own library and office furniture and they own jointly some text-books of less than $200 in value, two typewriters, and some office furniture. They do practically a cash business. All the receipts are turned into one fund, out of which are paid the rent, services of the employees, and other expenses, and the balance is divided from time to time among the three in an agreed proportion.

In 1909 *Mr. F. W. Houghton* was employed in the prosecution of a claim in the court of claims for the Mille Lac band of Chippewa Indians in the state of Minnesota against the United States on account of losses claimed to have been sustained by such band by reason of the opening of the Mille Lac reservation in said state. This proceeding was pursuant to authority given by act of Congress of February 15, 1909 (35 U. S. Stats. at Large, 619, ch. 126), which also provided that upon the final determination of any such suit the court of claims should have jurisdiction to decree the fees to be paid to the attorneys and that such should be paid out of any sum found due said band.

The litigation involved an appeal to the supreme court of

the United States. *U. S. v. Mille Lac Band of Chippewa Indians*, 229 U. S. 498, 33 Sup. Ct. 811. Thereafter and in October, 1916, upon petition to said court of claims, the fee of the attorneys in said litigation was fixed at about $100,000, to be paid out of the fund of nearly $700,000 secured for said band.

Pursuant to stipulation between the attorneys so engaged, the sum was so divided that there was paid to *Mr. F. W. Houghton*, in addition to the expenses of about $3,100, the sum of $21,117.01 as fees, which will be referred to hereinafter as $21,000, for convenience. This was received by him December 27, 1916, and distributed, as was the other income of the firm for that year, to the several plaintiffs in their respective proportions.

*Mr. F. W. Houghton* spent in such litigation about 413 or 407 days, 84 of which were spent in 1909 and 1910. On such a *per diem* and percentage basis, $4,300 would be about the proportionate amount of services in said matter in 1909 and 1910 out of the entire fee of $21,000. Of the $3,100 expenses, $172.31 were incurred in 1909 and 1910.

The three relators made a return to the assessor of incomes for the year 1916 as a firm or copartnership, and each individual made his separate return. In the joint return the relators showed the gross receipts of the firm, including the $21,000. They deducted therefrom the said $4,300 as being earned prior to 1911 and the $172.31 expenses of 1909 and 1910. From the balance thus found further deductions for expenses were made, concerning which no question is here raised, and the balance so left, together with the $4,300, being distributed among the three individuals, was claimed to be a proper deduction for the reasonable value of the services of the members of the firm in producing such income. This basis of computation would show no taxable income against such firm.

The assessor of incomes refused to allow the claimed deduction from the gross income of the two items of $4,300

and $172.31, and refused to deduct the payments made to the individual members of the firm as claimed by them.

An appeal was taken to the board of income tax review for Milwaukee county. Upon the hearing testimony was presented on behalf of the relators to the effect that the payments so made to the firm during the year 1916 were the reasonable value of the services rendered by the firm in producing such income, and no evidence was offered to the contrary.

The board of review confirmed the ruling of the tax assessor in refusing to allow the deductions of the $4,300 and the $172.31, but modified his other ruling by fixing an amount a little over one half of that actually paid to the members of the firm in that year as the reasonable value of such services. This resulted in an apparent taxable income upon which there would be due a substantial sum as an income tax. The board of review thereupon, on its own motion, made corresponding changes in the individual returns of the three relators, which were also before it.

Notice of the determination of the board of review was served on relators on September 21, 1917. In December, 1917, a writ of *certiorari* was issued out of the circuit court to review such proceedings upon the claim by said relators that the assessment so made was excessive, illegal, and void upon sundry stated grounds. Upon return being made and hearing had judgment was entered June 6, 1918, reversing and setting aside the action of the income tax board of review and the assessment by it of an income tax against the relators as such firm or copartners.

From the judgment so entered the defendant has appealed.

For the appellant there was a brief by the *Attorney General, E. E. Brossard,* assistant attorney general, *Winfred C. Zabel,* district attorney of Milwaukee county, and *Daniel W. Sullivan,* first assistant district attorney; and the cause was argued orally by *Mr. Brossard* and *Mr. Sullivan.*

State ex rel. Houghton v. Phelps, 171 Wis. 13.

For the respondents there was a brief by *Houghton, Neelen & Houghton* of Milwaukee, and oral argument by *Albert B. Houghton.*

ESCHWEILER, J.    The statutes necessary for consideration on the questions here are as follows:

Section 1087m—1. "There shall be assessed, levied, collected and paid a tax upon incomes received during the year ending December 31, 1911, and upon incomes received annually thereafter, by such persons and from such sources as hereinafter described; . . ."

Section 1087m—2. "1. The term 'person,' as used in this act, shall mean and include any individual, firm, copartnership, and every corporation, . . ."

Sec. 1087m—4 refers to deductions for incomes of persons other than corporations.    The following deductions are provided:

"(a) Payments made within the year for wages of employees and a reasonable allowance for services of copartners or members of a firm actually rendered in producing such income."

Relators contend that such an association of individuals for the practice of law as they have here is not such a "firm" or "copartnership" as is intended to be included in those two words as they appear in sub. 1, sec. 1087m—2, Stats., above quoted; that the words should be limited to include such trading or mercantile partnerships as have or need to have capital invested in order to properly carry on business.

The words used in this statute must be given their ordinary and usual meaning.    *Bayfield Co. v. Pishon,* 162 Wis. 466, 470, 156 N. W. 463.    When lawyers are associated in carrying on a law practice as relators do, they are usually and ordinarily spoken of and recognized as a law firm or firm of lawyers.    In the absence of any statutory circumscribing of the term, we see no escape from the conclusion that the firm comprised of the relators in this case was such a firm as is designated in the statute above quoted.

Relators further contend that the $172 expenses and the $4,300, being the proportionate amount of the earnings out of the $21,000 fee, all being as of prior to January 1, 1911, should not be considered for income-tax purposes as part of the income received in the year 1916; that it is in effect something that belonged to the firm as in the nature of capital to be considered as in existence prior to 1911, and therefore, under the decision of this court in *State ex rel. Bundy v. Nygaard,* 163 Wis. 307, 158 N. W. 87, not subject to be reached for income-tax purposes. That case pointed out the difference between capital and income, and under that ruling and the plain meaning of the two terms we must hold that the term "income," as used in sec. 1087*m*—1, *supra,* covers and includes just such and all of such a fund as was the $21,000 fee received by relators as part of their gross income of 1916. Cash thus received in that year is income of that year, and cannot be separated for income-tax purposes by any method of differentiation based upon questions as to when services may have been rendered for which such money was payment. To hold otherwise would be to do violence to the plain language of the statute and the general rules of construction thereof. In the long run it works no hardship, and above all is evidently the determination of the legislature.

Under sub. (a), sec. 1087*m*—4, *supra,* the relators' firm is entitled to have deducted from the income of 1916 the payments made during that year of a reasonable allowance for services of members of the firm actually rendered in producing such income.

The board of review arbitrarily fixed a sum much less than that actually paid to and distributed among the members of the firm that year as being in its judgment such a reasonable allowance. The relators contend that there was no basis for such an arbitrary allowance and that the several amounts paid to the members of the firm during that year

were reasonable in amount and were for services actually rendered in producing the income received in that year.

Having held, as we have above, that the money received during the year 1916 for legal services, irrespective of the time when the services were rendered, is, for the purposes of these statutes, the income for that year, it follows as a necessary and proper corollary to that proposition that the services which were necessary in order to produce such income are the services actually rendered in producing such income no matter when so rendered. The statute prescribes no time limitation, nor can we find any ground for inserting any such. The services for which the allowance is to be made are those rendered in producing the particular income, not those rendered merely during that particular year. If the relators are to be charged for taxing purposes with the cash received for services no matter when rendered, they are entitled, under a fair and reasonable construction of the statutes before us, to have considered the entire services necessarily rendered in producing such cash income whenever such were rendered.

There would be a strong if not conclusive presumption that the $21,000 allowed by the court of claims for the services in the Indian case was a reasonable allowance in view of the fact that it was fixed and determined by the court before whom most of the services were rendered and under express statutory authority given so to do. But in any event the testimony before the board of review established that in such situations as we have here the money which a firm of lawyers distributes among its members out of its income as their earnings is the reasonable allowance to them for their services rendered in producing such income.

This holding requires a finding that there was no taxable income to be assessed against these relators as a firm for the year 1916, and the judgment below in vacating the assessment was properly entered.

It is now contended by defendant that the application for the writ was too late, in that the matter of assessing and levying the income tax against the plaintiffs had passed beyond the jurisdiction of the defendant and the county board of review, and that the judgment could not save the plaintiffs against its enforcement, it having already reached the city tax roll.

The point not having been presented to the court below, we shall not pass upon it here. *Will of Brandon,* 164 Wis. 387, 390, 160 N. W. 177.

*By the Court.*—Judgment affirmed.