IN RE VOLUNTARY ASSIGNMENT OF THE MILWAUKEE SHEEP & WOOL COMPANY: TOWN OF EMERY, Appellant, vs. ALM, Assignee, Respondent.

*February 10—March 10, 1925.*

*Assignments for creditors: Claims for taxes: Priority: In receivership proceedings: Appeal by general creditor: By municipality for taxes due: What statute governs.*

1. In a voluntary assignment under secs. 1693 to 1702k, Stats. 1919, for the benefit of creditors, taxes assessed against the property of the assignor are a claim prior to expenses of administration, while in receivership proceedings the costs of administration have priority over claims for taxes.  pp. 325-327.

2. Statutes on voluntary assignments are designed for the benefit of general unsecured creditors, and sec. 1701, Stats. 1919, relative to appeals to the supreme court by creditors from the settlement of the assignee's accounts, does not apply to an appeal by a town to which taxes are due, the right of the town to appeal being governed by the general statutes.  p. 328.

3. Where the only objection to the taxes claimed by the town in the court below involved the question of priority, this court will not consider the objection that the town is not the real party in interest, such objection being raised for the first time on appeal.  p. 329.

APPEAL from orders of the circuit court for Price county: G. N. RISJORD, Circuit Judge.  *Reversed.*

This is an appeal by the town of *Emery,* Price county, Wisconsin, from certain orders of the circuit court directing the assignee herein to pay to said town a certain sum for taxes, and denying its application to have the taxes adjudged a preferred claim against the assets of the assignor in the hands of the assignee.

On the 27th day of July, 1921, the Milwaukee Sheep and Wool Company, a Wisconsin corporation, executed a voluntary assignment to *B. C. Alm,* assignee under the statutes, for the benefit of creditors.  The assignor for a number of years prior to the assignment operated a sheep ranch in said

town of *Emery,* and on May 1, 1919, an assessment was levied by the town against the personal property of the assignor in the sum of $1,031.65. These taxes have not been paid and were returned delinquent to the county treasurer. The assignor, in compliance with the provisions of sec. 1697, Stats., made and filed in the office of the clerk of the circuit court in the proper county an inventory of its assets and a list of its creditors, and in such list of creditors was included the claim of the town of *Emery* for the amount of the above taxes. The delinquent taxes having been so returned, the county of Price filed a claim therefor in the matter of said assignment, and the sole objections filed by the assignee to the claim so filed are as follows: "Payment of the within claim is objected to for the reason that said tax is illegal and that there is not sufficient funds out of which to pay same."

The report made by the assignee in said assignment disclosed that the total amount of money received by him consisted of the sum of $2,180.88, and that all of said sum had been expended for administration fees excepting the sum of $136.01, which the court ordered to be paid to the town treasurer of said town, to be applied by him on the tax levied on the property of the assignor. In other words, the court found that the administration expenses constituted a prior claim upon the assets of the assignor.

Upon the filing of the report of the assignee the town objected to the allowance and approval of the same upon the ground that its tax claim constituted a prior claim upon the assets received by the assignee and held by him, and upon the ruling of the court as aforesaid, overruling the objections of the town, the town has prosecuted this appeal.

For the appellant there were briefs by *H. J. Blanchard* of Phillips, attorney, and *G. W. Blanchard* of Edgerton, of counsel, and oral argument by *G. W. Blanchard.*

For the respondent there was a brief by *W. K. Parkinson* of Phillips, attorney, and *Walter F. Mayer* and *James E.*

*Coleman,* both of Milwaukee, of counsel, and oral argument by *Mr. Mayer.*

Doerfler, J.    This case on appeal presents as its principal issue the order of payment of taxes assessed against the property of an assignor who has executed a voluntary assignment, under the provisions of ch. 80 of the Statutes for the year 1919, for the benefit of his creditors.    More particularly stated in its narrower aspect, the question is: Are such taxes a prior claim to the costs of administration, or *vice versa?*

Sec. 1698 of the 1919 Statutes provides for notice to creditors.    Sec. 1699 provides that at the expiration of three months from the first publication of the notice provided for in sec. 1698 the assignee shall file with the clerk of the court proof of the publication and a list of the creditors to whom such notice was mailed, etc., and a list of the creditors from whom affidavits of claims have been received, etc.    The statute then provides that, within thirty days after such list is filed, the assignee or any creditor may file written objections, and serve a copy thereof upon such creditor. The objections shall then be heard and the court shall make such order upon the final hearing as shall be just.

Sec. 1700 of said Statutes is as follows:

"Every creditor of the assignor who shall not file such an affidavit of his claim within the time limited as aforesaid shall not participate in any dividends made before his claim is filed. . . . The assignee may pay, or the court may order a dividend to be paid, at any time, making such provision as shall be necessary for the protection of claims in dispute. But before making any dividend the assignee shall pay all taxes assessed upon the property assigned, which remain unpaid, and the compensation due all laborers, servants and employees for labor or personal services performed for the assignor within the six months next preceding the making of the assignment, the claims for which shall be paid by him next after the payment of unpaid taxes and assessments,

debts due the United States or this state, the expenses of the assignment and the execution of the trust."

A reading of this statute makes it clear that taxes assessed upon the property assigned, the pay due to all laborers, etc., for labor for a period of six months next preceding the making of the assignment, debts due the United States or this state, and the expenses of the assignment, constitute claims against the assets in the hands of the assignee which are prior to the claims of general creditors.

Ch. 80 of the Statutes aforesaid prohibits preferences as to general creditors. In this respect a voluntary assignment for the benefit of creditors under the statutes differs materially from a common-law assignment, under which preferences were authorized to be created. A common-law assignment without preference was ineffective as to such claims which constituted specific liens and claims in the nature of taxes due to the government or its subdivisions. So that sec. 1700, Stats., in referring to the priority of claims for taxes and other preferred claims, is largely declaratory of the common law. However, where the statute in any respect changes the rule or order existing under the common law, such provisions must prevail. So that while the assignment statutes were primarily enacted for the benefit of general creditors and granted to them the basis of equality under the law, it was not the intention to affect such claims as had priority either pursuant to contract relations or by operation of law.

Sec. 1700, therefore, in so far as it provides for a distribution of the estate of the assignor in the hands of the assignee, deals with two classes of claims: first, preferred claims; and second, claims of general creditors. Among the claims preferred are those for labor coming within the provisions of sec. 1700, but such claims shall be paid by the assignee after the payment of unpaid taxes and assessments, debts due the United States or this state, the expenses of

the assignment, and the execution of the trust. While the statute does not in express language provide for the payment of the taxes before the payment of the expenses of administration, the order of priority is clearly indicated by the order in which these various preferred claims are mentioned in the statute.

The proceeds derived from taxes are an essential to the maintenance of the government, and this consideration lies at the basis of the government's priority. Such priority was inherent in the common law of England before we became independent. As is said in *Central Trust Co. v. New York C. & N. R. Co.* 110 N. Y. 250, 18 N. E. 92:

"There is great force in the claim that the state has succeeded to all the prerogatives of the British crown so far as they are essential to the efficient exercise of powers inherent in the nature of civil government, and that there is the same priority of right here, in respect to the payment of taxes, which existed at common law in favor of the public treasury."

That taxes are a prior claim over the costs of administration in bankruptcy cases is manifested by the federal Bankruptcy Act. It is true that this federal act is more specific than our own statute upon the subject. The federal act in express language creates the order of priority, and at the head of the list are taxes legally due and owing to the United States, state, county, district, or municipality. Under the federal act it has been held that taxes due the United States must be paid, to the exclusion of the reasonable expenses of administration of a bankrupt's estate. *In re Weiss,* 20 Am. Bankr. Rep. 247; *In re Prince & Walter,* 131 Fed. 546, 12 Am. Bankr. Rep. 675; *In re Grignard L. Co.* 158 Fed. 557, 19 Am. Bankr. Rep. 743; *In re Weissmann,* 178 Fed. 115; *Sellers v. Bell,* 94 Fed. 801, 2 Am. Bankr. Rep. 529. Cases holding to the contrary are referred to in a note to 31 L. R. A. N. s. 988. We believe, however, that the

construction of the federal Bankruptcy Act in the cases above cited is in accordance with the weight of authority and is supported by the better logic.

In receiverships the weight of authority in this country appears to give the expenses of administration priority over taxes, as will appear in *Bauer v. Wilkes-Barre L. Co.* 274 Pa. St. 165, 117 Atl. 920, 24 A. L. R. 1171, and the cases therein cited and quoted from. See, also, note to the *Bauer Case* in 24 A. L. R. 1177. In the *Bauer Case,* however, it was held that the receiver's compensation is not a claim or lien, but is a part of the costs in the proceeding, and that the statute does not fix state taxes as prior to costs. Our statute on receiverships is in harmony with the prevailing doctrine in this country that the costs of administration form a prior claim, in receiverships, to taxes. Sec. 2787*a* provides:

"Whenever a receiver shall be appointed by any court to manage, conduct, settle, adjust or close up any mercantile, manufacturing or other business such receiver shall immediately report to the court the amount due the employees and laborers in such business; and said court shall order its receiver to pay out of the first receipts of said business, after the payment of costs, debts due the United States or this state, taxes and assessments and the current expenses of carrying on or closing said business, the wages of such employees and laborers which accrued within three months immediately prior to his appointment."

34 Cyc. 346 states the rule as to receivers as follows: "Generally, taxes constitute a claim upon the assets in the hands of a receiver superior to every other claim except costs." See, also, 1 Clark, Receivers, p. 909, sec. 827.

In the *Bauer Case, supra,* it is also said:

"If the rule were otherwise, that a receiver's compensation and counsel fees are not part of the costs and preferred for payment out of the fund in his hands, we would have in many instances this anomalous and unjust result: the fund

would be raised entirely by the efforts of the receiver and his counsel, without which there would be no fund at all, yet it would be completely swept away from them and into other pockets by reason of priority of claim, and they would go unrequited for their labors.  Receivers in many instances, where the conservation of assets is vital, could not be raised up if this were the rule."

From the foregoing the reason for the priority of the costs of administration in receiverships becomes clear.  The receiver is the arm of the court.  He is appointed by the court.  He holds the property primarily for the court and administers the trust under the direction of the court.  While the statutes of this state in some respects limit the powers of the receiver and provide for the appointment of receivers, nevertheless, under sub. (5) of sec. 2787, receivers may be appointed "as are now provided by law or may be in accordance with the existing practice except as otherwise provided in this chapter."

Where a receiver is appointed for an insolvent corporation, no definite time is fixed by the statute during which he may wind up the affairs of the business of which he has charge.  The matter rests almost entirely in the sound discretion of a court of equity.  On the other hand, the statutes of this state pertaining to voluntary assignments contemplate the earliest possible winding up of the affairs of the assignor by the assignee, and a definite time is fixed for such purpose.  The entire procedure in an assignment is largely determined by the statute, and in order to be a valid assignment the statutory requirements must be complied with.  It will thus appear that in the one instance we have the winding up of a business by a receiver under the direction of the court, and on the other hand a similar object pursued under the statutes pertaining to voluntary assignment.

The legislature in this state has seen fit in its statutes on voluntary assignments to deviate from the common-law

rule as laid down in receiverships, with respect to priorities of claims. Concededly it is a hardship for an assignee to accept his office and to perform his duties under circumstances which may prevent him from receiving honest compensation for valuable services performed. And it must also be conceded that an assignee who properly executes his trust performs duties which tend to conserve the identical property out of which these preferred claims are paid. However, the legislature has directed the order of priority by statute, and our conclusions in construing the statute must be in accordance with the intentions therein expressed, and such conclusions cannot be otherwise than as herein indicated unless we override the will of the people as expressed by its duly authorized legislative representatives. When the assignee consents to assume his trust the law imposes upon him, as a part of such trust, the performance of certain statutory duties. Existing as a part of the trust is the duty to pay taxes, which constitute the supreme claim upon the assets in his hands. His assumption of duty is voluntary. Before he evidences his consent he must determine from a reasonable aspect of the situation as it then appears whether a remuneration will accrue to him or not. He is the sole judge under the circumstances, and must abide by the results whether favorable to him or otherwise.

The town of *Emery* is the appellant herein, and it is argued by counsel for the assignee that under the provisions of sec. 1701 the town cannot appeal because it is not a creditor. Sec. 1701 provides:

"Every assignee who shall accept the assignment of any property under the provisions of this chapter or who has heretofore accepted his trust and has not settled the same shall, within six months thereafter or within such further time, not exceeding one year, as the court or judge shall allow, file with the clerk a full and itemized statement, verified by his oath, of the property by him received, the manner of his dealing therewith, the amount of money realized

by him, the condition of the property and funds in his possession, the names and residences of the assignor's creditors, the dividends paid them, his receipts and disbursements, with his claim for compensation; . . . Upon filing such report such assignee may apply to the court, upon not less than twenty days' notice thereof by mail to the respective creditors named therein, for a final settlement of such account; and at the time and place named the circuit court shall hear any objections made by any creditor, take such evidence as may be proper, and settle and adjust such accounts and the compensation and expenses of such assignee, whether objection be made or not, as shall be just; and his order thereupon shall be conclusive upon all parties, including the sureties of the assignee; but the assignee or any creditor may cause a bill of exceptions to be settled and appeal from such order within six months from the entry thereof to the supreme court in the manner prescribed for appeals in civil actions. . . ."

By way of reiteration, let it be said that the statutes on voluntary assignments are designed for the benefit of general, unsecured creditors. It was such object that the legislature had in mind when it enacted sec. 1701, above quoted. Such statute deals with the assets of the estate and the claims of creditors, and instead of limiting the right of appeal in accordance with the general statutory provisions upon the subject of appeal, such appeal is confined to a period of six months. The town, to which the taxes are due, is not interested in claims of creditors, as its claim as to priority is supreme. Therefore, said section has no application to it, but its right of appeal is governed by the general statutes upon the subject.

It was held in *Gallup v. Schmidt,* 154 Ind. 196, 56 N. E. 443:

"A tax is not an ordinary debt. It is not founded upon contract, express or implied. It flows from the exercise of sovereign power, and is imposed without the consent of the debtor. It is enforceable summarily by distress and sale and without exemption or relief from valuation laws."

Such is also substantially the holding of this court in *Assignment of Riddell*, 93 Wis. 564, 67 N. W. 1135.

The proceedings pursued by the town in the instant matter are in strict conformity with those outlined and approved in *Marathon Co. v. Barnes*, 86 Wis. 663, 667, 57 N. W. 961; *Assignment of Riddell*, 93 Wis. 564, 67 N. W. 1135; *State v. Railway Cos.* 128 Wis. 449, 501, 108 N. W. 594. So that, while the taxes involved have been heretofore generally referred to as a prior claim, they are not a claim in the same sense as are claims of general creditors; they do not involve the element of debt as do claims of general creditors, but are imposed by the government to raise funds to defray its expenses. They lack the contractual element of general claims of creditors; therefore they need not be filed. "The assignee must, at his peril, inquire whether the property or fund in his hands is liable for assessments or levies of taxes. There is no hardship in this, because all such matters are of record in the county where made." *Huiscamp Bros. v. Albert*, 60 Iowa, 421, 15 N. W. 264. From this it follows that the town's right to appeal does not spring from the provisions of sec. 1701, but from the statutes on appeal in civil actions generally.

Counsel for the assignee raise a number of questions on this appeal which were not raised in or submitted to the court below. Among other points it is claimed that the town of *Emery* is not the real party in interest; that the claim under the statute for taxes belongs to the county. The only objections to the tax raised in the court below involve the question of priority, above treated in this opinion. It becomes clear, therefore, that under the rule, well established in this and other jurisdictions, the points now raised for the first time should not be considered by this court. *Cappon v. O'Day*, 165 Wis. 486, 490, 162 N. W. 655; *State ex rel. Houghton v. Phelps*, 171 Wis. 13, 176 N. W. 217; *Will of Brandon*, 164 Wis. 387, 390, 160 N. W. 177;

3 Corp. Jur. 689, and numerous cases there cited in note. However, in disposing of the contention of counsel, we need only refer to the provisions of sec. 1128 of the Statutes for 1919, and the decision of this court in *Spooner v. Washburn Co.* 124 Wis. 24, 32, 102 N. W. 325.

*By the Court.*—The judgment of the lower court is reversed, and the cause is remanded with directions for further proceedings in accordance with this opinion.