279 P.2d 451

Edgar M. CLARK, Appellant,

v.

Warren PETERSON, Thad M. Moore, and William E. Stanford, as members of Arizona State Tax Commission, and Arizona State Tax Commission, Appellees.

VALLEY NATIONAL BANK OF PHOENIX, Executor of the Estate of Helen W. Clark, Deceased, Appellant,

v.

Warren PETERSON, Thad M. Moore, and William E. Stanford, as members of Arizona State Tax Commission, and Arizona State Tax Commission, Appellees.

No. 5853.

Supreme Court of Arizona.

Feb. 1, 1955.

Laurens L. Henderson, and Henderson, Trew & Clark, of Phoenix, for appellants.

Ross F. Jones, the Atty. Gen., and Eldon R. Clawson, Asst. Atty. Gen., for appellees.

WINDES, Justice.

Appellant, Edgar M. Clark, and his late wife, Helen W. Clark, prior to her death in February, 1950, were bona fide residents of Arizona for the years 1948, 1949, and 1950. During each of these years they received $62,590.92 as an annual retirement allowance from the former employer of Mr. Clark, the Standard Oil Company of New Jersey. During his active service with the company he was never a resident of nor employed in Arizona. He and his wife established their residence in Arizona subsequent to retirement. The Arizona Tax Commission assessed taxes upon this income under the provisions of the Income Tax Act of 1933. Following the procedure provided by statute for protest and appeal to the courts, the matter was taken to the superior court where the action of the commission was sustained. Edgar M. Clark in his behalf and the Valley National Bank of Phoenix as executor of the estate of Mrs. Clark appeal and ask us to test the legality of the assessment.

The power of the state to tax this class of income is not questioned. The sole point presented by the appellants is whether our income tax act then in effect properly construed authorizes the taxation of the item. Appellants' position is that it has its source outside the state and the overall intention of the legislature is not to tax such income. This calls for an examination of the various provisions of the act which might indicate what class of income of residents of the state the legislature intended to include as taxable income.

All sections of the statute hereinafter mentioned refer to A.C.A. 1939. Section 73–1502 provides that every resident of the state, or in case of his death his personal representative, shall pay a tax on net income, and non-residents shall pay a tax on net income derived from property located in or business transacted in Arizona. Appellants contend that when this section says

that residents "shall pay a tax on net income", it means only net income the source of which is within the state of Arizona.

Net income means gross income less allowable deductions. Section 73–1504(j). Gross income consists of seven specific sources of income and "all other gains, profits or income, subject to the exemptions". Section 73–1506. Under this provision the only designated gross income limiting the source to Arizona is that derived from returns on Arizona real estate. This would seem to indicate an intention to include in gross income at least some items the source of which originate outside Arizona. In determining what shall make up the items of gross income, however, other provisions of the act must be considered. For illustration, section 73–1506(e) expressly includes profits derived from the transaction of business, whereas section 73–1524 makes provision for excluding from taxation the income from business transacted outside the state. If section 73–1502 means to authorize a tax as to residents on only net income having its source in the state, we fail to see any occasion for section 73–1524 excluding income originating from business transacted outside the state. It was already excluded if section 73–1502 has the meaning for which appellants contend.

Section 73–1521 also has a bearing on this problem. It reads as follows:

"*Situs of Income.*—(a) Income from mercantile or manufacturing business not requiring apportionment under section 24 (section 73–1524), and income from rentals or royalties from real estate or tangible personal property, or from the operation of any farm, mine, or quarry, or from the sale of real property or tangible personal property shall follow the situs of the business or property from which derived. All other income, including royalties from patents, income from personal services, professions and vocations and from land contracts, mortgages, stocks, bonds and securities or from the sale of similar intangible property, shall follow the residence of the recipient, except as in this act otherwise specifically provided."

The first sentence of this section fixes the situs of income derived from mercantile or manufacturing business not controlled by said section 73–1524 and income from real estate, tangible personal property, etc., as that of the location of the business or property. The second sentence says that all other income such as that derived from personal services, professions and vocations, from mortgages and securities or similar intangible property "shall follow the residence of the recipient". It is clear that appellants' retirement pay must come under the second sentence of this section and follow the residence of the recipient even though the source thereof may be outside the state. We see no useful purpose of requiring these items of income when acquired

outside the state to follow an Arizona resident into the state except to peg them as items having a source outside the state which are subject to taxation in the state.

It has been held that retirement pay such as involved herein comes under the category of income from personal services, and is taxable as such under the Federal income tax act providing for the taxation of salaries, wages or compensation for personal service. Hooker v. Hoey, D.C. 27 F.Supp. 489, affirmed on opinion below, 2 Cir., 107 F.2d 1016.

■ Appellants indicate that to tax this income would be giving the act a retrospective operation. While this is not given as a supporting reason for any assignment of error, yet since appellee has recognized it as such in its brief, we will not entirely ignore the matter, although we would be so justified. If it be considered as income earned prior to the years involved, it could not be taxed until it accrued or was received. The general rule is that income earned from services rendered is taxable for the year in which received. State ex rel. Houghton v. Phelps, 171 Wis. 13, 176 N.W. 217. If the income is to be considered as income either within or without the state, it would have to be taxed as though earned at the time it accrues or is received. In either event this income accrued and was received on a month to month basis and became taxable for the years in which it accrued or was received.

■ Appellants lean heavily upon the Wisconsin case of State ex rel. Arpin v. Eberhardt, 158 Wis. 20, 147 N.W. 1016. Their contention is that our act having been patterned after that of Wisconsin, that case should control our decision. We think appellants exaggerate the value of this case as support for their position. The section of the statute construed in that case was similar to our section 73–1502 but with substantially different language. The Wisconsin statute provides first that the tax be levied upon the income of all residents and as to non-residents upon income derived from sources within the state. In this it is substantially the same as ours except our act limits non-resident taxable income to that derived from property located or business transacted within the state. However, the Wisconsin statute in the same section expressly subjects certain income of residents derived from outside sources to taxation. The court reasoned that since the section made express provision for taxing certain outside income, such was the only income from outside sources covered by the statute. Our statute does not make such provision but prescribes what outside income shall *not* be taxed. This difference in the statute calls for a different interpretation. If you apply the rule of statutory construction, *inclusio unius est exclusio alterius,* when the legislature provides that certain outside income is not taxable, it means those not mentioned are taxable, whereas when the Wisconsin legislature expressly provided what outside

income was taxable, using the same rule of interpretation, it meant that no other outside income was taxable. The Wisconsin court stated that if it were not for the provision expressly taxing certain outside income, the most reasonable construction would be that the section meant income from all sources.

Section 73–1509 includes as being exempt from taxation pensions received from the United States. Had it been the intention to exclude all pensions (and this may well be classed as an industrial pension), there would be no occasion to limit the exemption to United States pensions. If an industrial pension from the Standard Oil Co. of New Jersey is outside income, with equal reason, so is a United States pension. If the overall intention of the act was to reach only income having a source in Arizona, there was no occasion for exempting pensions from the United States. They were never taxable, if appellants' contention is correct.

Our view is that net income of residents means net income from all sources except insofar as other provisions of the act relieve it of the burden, and there being no other provision in the act that eliminates this item of retirement pay, it is subject to taxation.

The judgment is affirmed.

LA PRADE, C. J., and UDALL, PHELPS, and STRUCKMEYER, Jr., JJ., concurring.